IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN -2 P 4: 19

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RAYTHEON COMPANY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 03-CV-11800-RGS |
| AXIS SURPLUS INSURANCE ) <br> COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RAYTHEON COMPANY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 04-CV-10432-RGS |

FEDERAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................1

  A.  The Policy ..................................................................................................1

  B.  The Prior Litigation ...................................................................................2

  C.  The ERISA Litigation ...............................................................................4

III. ARGUMENT ......................................................................................................8

  A.  THIS CASE SHOULD BE RESOLVED ON THE
      PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C). ............................8

  B.  THE PENDING OR PRIOR EXCLUSION BARS
      COVERAGE FOR THE ERISA ACTION...................................................9

    1.  The Prior Litigation is a "Suit or Other Proceeding . . .
        Pending . . . Against Any Insured, on or Prior to the
        Pending or Prior Date."..................................................................10

    2.  The ERISA Litigation is Based Upon or Arises From
        Facts, Circumstances or Situations That Are "The
        Same" as or "Substantially Similar" to Those Alleged
        In the Prior Litigation....................................................................10

      a)  Both Complaints Allege Improper Recognition of
          Losses, Revenues and Costs at Raytheon's
          RE&C Division......................................................................12

      b)  Both Complaints Allege Raytheon's Failure to
          Disclose Cost Overruns and Delays on U.S.
          Defense Department Projects. ..............................................13

      c)  Both Complaints Allege Raytheon's Failure to
          Disclose a Shortage of Skilled Engineers. ...........................13

      d)  Both Complaints Allege Inaccuracies in
          Raytheon's August 1999 10-Q and Related
          Statements. ...........................................................................14

## TABLE OF CONTENTS

Page

e)  Both Complaints Allege that Raytheon's Stock
    Price Plummeted Following Adverse Disclosures
    in October 1999.................................................................... 14

f)  Both Complaints Allege Misconduct in
    Connection with Raytheon's Sale of Its RE&C
    Division. ............................................................................. 15

IV. CONCLUSION ................................................................................ 17

## TABLE OF AUTHORITIES

Page

*Cases*

Auto Europe, L.L.C. v. Connecticut Indem. Co., No. 01-271-PH, 2002
  WL 475123 (D. Me. Mar. 28, 2002) ........................................................8

Bensalem Township v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303 (3d
  Cir. 1994) .............................................................................................9

Bensalem Township v. Int'l Surplus Lines Ins. Co., Civ. A. No. 91-
  5315, 1992 WL 1420242 (E.D. Pa. June 15, 1992) .......................9, 10, 15

Gonzalez y Camejo v. Sun Life Assur. Co. of Canada, 313 F. Supp. 1011
  (D.P.R. 1970)........................................................................................8

Hakim v. Massachusetts Insurers' Insolvency Fund, 675 N.E.2d 1161
  (Mass. 1997) .........................................................................................9

Hebert Abstract Co. v. Touchstone Prop., Ltd., 914 F.2d 74 (5th Cir.
  1990)....................................................................................................8

Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971 (9th Cir. 1999)........................8

Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522 (Mass.
  2003)....................................................................................................8

In re Global Crossing Ltd. Sec. & "ERISA" Litig., 223 F. Supp. 2d 1384
  (J.P.M.L. 2002) .....................................................................................5

In re Royal Ahold N.V. Sec. & "ERISA" Litig., 269 F. Supp. 2d 1362
  (J.P.M.L. 2003) .....................................................................................5

Petricca v. City of Gardner, 194 F. Supp. 2d 1 (D. Mass. 2002)...................................8

Rivera-Gomez v. Adolfo de Castro, 843 F.2d 631 (1st Cir. 1988) ................................8

Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000) ........................................5

Taylor v. Philip Morris Inc., No. C 03-0758MMC (PR), 2003 WL
  22416693 (N.D. Cal. Oct. 20, 2003)........................................................5

Town of Norwood, Mass. v. New England Power Co., 202 F.3d 408 (1st
  Cir. 2000..............................................................................................5

## TABLE OF AUTHORITIES

Page

Universal TeleServices Ariz., LLC v. Zurich Am. Ins. Co., No. 001670,
    2004 WL 550761 (Pa. Ct. Comm. Pl. Mar. 4, 2004) .................................................9

Zunenshine v. Executive Risk Indem., Inc., No. 97 Civ. 5525 (MBM)
    1998 WL 483475 (S.D.N.Y. Aug 17, 1998).........................................................9, 10

*Statutes and Rules*

Federal Rule of Civil Procedure 12(c)...........................................................................8

## I.    INTRODUCTION

Federal Insurance Company ("Federal") submits this memorandum of law in support of its motion for judgment on the pleadings. A motion for judgment on the pleadings must be granted where material facts are not in dispute and judgment can be rendered by reference to the pleadings and other facts of which the court can take judicial notice. That is precisely the case here.

The only issue in this action is whether an insurance policy issued by Federal to Raytheon Company ("Raytheon") covers a "tag along" lawsuit brought under the Employees Retirement Income Security Act ("ERISA") based on allegations that are virtually identical to those alleged in a securities lawsuit filed several years ago. That issue may — and indeed, must — be resolved solely by reference to the policy and the complaints in the ERISA and securities actions. Those documents demonstrate, as a matter of law, that the "Pending or Prior Exclusion" in the Federal policy precludes coverage for the ERISA action because that action is based upon or arises from "the same or any substantially similar fact, circumstance or situation underlying or alleged" in the previously-filed securities litigation.

## II.    FACTUAL BACKGROUND

### A.    The Policy

Federal issued Executive Protection Policy No. 8151-5319 (the "Policy") to Raytheon for the Policy Period of September 15, 2002 to September 15, 2003. Compl. ¶ 6 & Ex. A; Answer ¶ 6. The Policy's Fiduciary Liability Coverage Section provides coverage for "Loss for which the Insured becomes legally obligated to pay on account of any Claim first made against the Insured during the Policy Period . . . for a Wrongful Act committed, attempted, or allegedly committed or attempted

before or during the Policy Period," subject to the terms, conditions, limitations, and exclusions contained in the Policy. Compl. ¶ 7 & Ex. A, FLCS cl. 1; Answer ¶ 7.

Clause 5(g) of the Fiduciary Liability Coverage Section of the Policy (the "Pending or Prior Exclusion") provides as follows:

> [Federal] shall not be liable for Loss on account of any Claim made against any Insured:
>
> *        *        *
>
> (g) based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any Insured, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein[.]

Compl. ¶ 9 & Ex. A, FLCS cl. 5(g); Answer ¶ 9. The Pending or Prior Date set forth in Item 7 of the Declarations is September 15, 2000. Compl. ¶ 9 & Ex. A, FLCS Decl.; Answer ¶ 9.

B.    The Prior Litigation

On October 19, 1999 – nearly one year before the September 15, 2000 Pending or Prior Date – a putative securities class action styled Meisel, et al. v. Raytheon Company, et al., Civil Action No. 99 CV 12142 PBS (the "Prior Litigation"), was filed in this Court against Raytheon and two former Raytheon officers. Compl. ¶ 10; Answer ¶ 10. A Consolidated and Amended Class Action was subsequently filed on June 12, 2000 – three months before the Pending or Prior Date – which also named Raytheon and certain former directors and officers of Raytheon, including Franklyn Caine ("Caine"), Raytheon's former Chief Financial Officer, as defendants (the "Amended Securities Complaint"). Compl. ¶ 11 & Ex. B; Answer ¶ 11.

The Amended Securities Complaint asserted causes of action based on Raytheon's alleged dissemination of materially false and misleading public statements and omissions regarding Raytheon and its subsidiaries during the period of October 7, 1998 to October 12, 1999, which allegedly caused the market price of Raytheon securities to become artificially inflated. Am. Sec. Compl. ¶¶ 1, 2, 30 (Exhibit B to the Complaint). The factual allegations in the Amended Securities Complaint relate to, *inter alia*, the alleged improper recognition of losses, revenues, and costs at Raytheon's Engineers & Constructors ("RE&C") division, cost overruns and delays on U.S. Department of Defense projects, a shortage of skilled engineers, inaccurate financial disclosures, Raytheon's sale of its RE&C division, and the drop in Raytheon's stock price following adverse disclosures in October 1999. In particular, the Amended Securities Complaint alleges:

- "[T]hroughout the [October 7, 1998, to October 12, 1999] Class Period, defendants issued materially false and misleading statements which deceived the investing public as to [Raytheon's] financial performance and position, by means of, <u>inter alia</u>, accounting irregularities and violations of Generally Accepted Accounting Principles ('GAAP') in Raytheon's Engineers & Constructors Division." Am. Sec. Compl. ¶ 2.

- Raytheon caused RE&C to violate GAAP by, <u>inter alia</u>, failing to "record[ ] . . . losses on approximately 40 major contracts in process, even though RE&C management had already quantified that such losses were expected to result from these projects," <u>id.</u> ¶¶ 39-55, by improperly "recogniz[ing] . . . revenues on . . . <u>anticipated</u> contracts" which "never closed[,]" <u>id.</u> ¶¶ 56-65 (original emphasis), and by "prematurely book[ing] costs [and] . . . corresponding revenues and profits" before such costs were incurred. <u>Id.</u> ¶¶ 66-70.

- [T]hroughout the Class Period, Raytheon knew but failed to disclose that "a number of the Company's key government defense projects," including four major development contracts between Raytheon Aircraft Corporation and the United States Air Force and United States Navy, such as the P-3 Orion contract, were "materially behind schedule and over-budget." <u>Id.</u> ¶¶ 2, 71-98, 103-07.

- "[T]hroughout the Class Period, Raytheon knew but failed to disclose . . . that the Company was suffering from a critical shortage of skilled engineers required to satisfy its government contracts." Id. ¶¶ 2, 99-102.

- Raytheon's Form 10-Q for the second quarter of 1999 (the "August 1999 10-Q") and other "statements regarding [Raytheon's] and RE&C's 1999 second quarter results . . . (including the financial statements contained therein) were materially false and misleading in that [Raytheon] and RE&C failed to disclose millions of dollars of losses and write-downs required under GAAP and prematurely recognized millions of dollars of profits on accelerated costs and revenues." Id. ¶¶ 134-141.

- The problems affecting RE&C led to the sale of that division in April 2000. Id. ¶¶ 157, 159.

- On October 12, 1999, *The Wall Street Journal* reported that Raytheon "was over cost or behind schedule on more than a dozen of its Pentagon fixed-price contracts," id. ¶ 143, and Raytheon announced that it "would be taking total charges of $638 million pre-tax to be recorded in 1999" for "operating charges" due to "contract performance issues," "restructuring charges" and asset write-downs, and that it had "reduced its earnings expectations for 1999 and 2000 as a result of revenue shortfalls and lower-than-expected margins." Id. ¶ 145.

- After "the true, adverse information was finally disclosed by the Company at the end of the Class Period, the price of Raytheon common stock . . . declined . . . and has remained depressed." Id. ¶ 2.

C.    The ERISA Litigation

On or about May 19, 2003, a putative class action styled Wall *et al.* v. Raytheon Company, *et al.*, Civil Action No. 03-10940 RGS (the "ERISA Litigation"), was filed in this Court on behalf of participants in or beneficiaries of certain Raytheon retirement plans.  Compl. ¶ 13 & Ex. C; Answer ¶ 13.  The original complaint in the ERISA Litigation was subsequently amended and consolidated with similar purported ERISA class actions.

The Amended ERISA Complaint asserts allegations that are substantially the same as — indeed, virtually identical to — those in the Amended Securities Complaint. 1/ Like the plaintiffs in the Prior Litigation, the plaintiffs in the ERISA Litigation purport to assert claims against Raytheon and current and former officers and employees of Raytheon, including Caine, based on "regular and recurring misrepresentation[s] concerning the financial health of several of [Raytheon's] major products divisions" that had been occurring "since at least late-1998" and had resulted in "plan participants receiving an artificially inflated picture of how attractive an investment in [Raytheon] stock was for their retirement savings. . . . [and experiencing] significant losses . . . when the extent of such problems slowly became public." Second Consolidated Amended Complaint for Breaches of Fiduciary Duty under ERISA (the "Amended ERISA Compl.") ¶ 65 (attached hereto as Exhibit 1). 2/ The class period for the ERISA Litigation begins on October 7, 1998 — the same day as the class period of the Prior Litigation, and the date on which Raytheon allegedly recognized some losses associated with its government contracts without disclosing others and expressly represented that it did not have any "further expectations" of additional losses. See id. ¶ 56; see also Am. Sec. Compl. ¶¶ 49-50.

---

1/    These types of "tag along" ERISA cases have become increasingly common in recent years, and  have been recognized to be based on the same common facts and events as their predecessor securities actions. See, e.g., In re Royal Ahold N.V. Sec. & "ERISA" Litig., 269 F. Supp. 2d 1362, 1363 (J.P.M.L. 2003); In re Global Crossing Ltd. Sec. & "ERISA" Litig., 223 F. Supp. 2d 1384, 1385 (J.P.M.L. 2002).

2/    Although the Amended ERISA Complaint was not attached to Federal's Complaint because it had not yet been filed, in considering a motion for judgment on the pleadings a court may consider facts that are contained in materials of which the court may take judicial notice, including "allegations made in pleadings and other documents filed in other lawsuits in federal and state courts." Taylor v. Philip Morris Inc., No. C 03-0758MMC (PR), 2003 WL 22416693, at *1 (N.D. Cal. Oct. 20,

Like the Amended Securities Complaint, the Amended ERISA Complaint includes allegations relating to, *inter alia*, the alleged improper recognition of losses, revenues, and costs at RE&C, cost overruns and delays on U.S. Defense Department projects, a shortage of skilled engineers, inaccurate financial disclosures, Raytheon's sale of its RE&C division, and the drop in Raytheon's stock price following adverse disclosures in October 1999. In particular, the Amended ERISA Complaint alleges:

- "Defendants' misleading, inaccurate, and incomplete statements regarding [Raytheon's] fiscal health extended from 1998 through 1999, and beyond. Although [Raytheon], in its 10-Q for its second fiscal quarter of 1999 [the August 1999 10-Q]. . . noted that it may have to take 'cost reduction actions' as a result of competitive pressures . . . Raytheon assured investors and Plan participants that 'based on the strength of new orders in 1999 and the success of [Company] restructuring activities to date, the company believes that it is positioned to achieve its long-term objectives for revenue growth and profitability.'" Am. ERISA Compl. ¶ 66.

- With respect to its RE&C division, "by August 1998, [Raytheon] had failed to take write-downs on approximately forty contracts in progress in which [Raytheon] had already been subject to quantifiable losses," id. ¶ 80, Raytheon "improperly booked tens of millions of dollars of revenues on at least eight anticipated contracts, despite the fact that these contracts were not legally binding commitments," id. ¶ 86, and Raytheon "caused RECI to prematurely book costs on a number of its long-term contracts in progress." Id. ¶ 88.

---

[Footnote continued]

2003) (citing Rothman v. Gregor, 220 F.3d 81, 92 (2d Cir. 2000)); see also, e.g., Town of Norwood, Mass. v. New England Power Co., 202 F.3d 408, 412 n.1 (1st Cir. 2000) (taking judicial notice of the record in a companion case and in FERC proceedings). Accordingly, the Court may take judicial notice of the allegations in the Amended ERISA Complaint.

- The August 1999 10-Q was inaccurate because, as revealed in an October 12, 1999, *Wall Street Journal* article, it failed to disclose that "'[a]pproximately a dozen of [Raytheon's] fixed-price Department of Defense contracts were over budget and behind schedule.'" Id.

- Raytheon failed to disclose delays and cost overruns associated with the P-3 Orion contract between the United States Navy and Raytheon Aircraft Corporation. Id. ¶¶ 94-104.

- The August 1999 10-Q also failed to disclose that Raytheon "'had been plagued for some time by a shortage of quality software engineers to work on revenue-producing programs, and faced the likelihood of not being able to complete 1999 orders.'" Id. ¶ 68.

- The accounting improprieties, misrepresentations and other problems concerning RE&C led to the sale of that division in April 2000 and exposed Raytheon to liability to the purchaser of RE&C. Id. ¶¶ 108-135.

- On October 12, 1999 Raytheon "announced . . . that its previously predicted 'cost reduction action' charge of $350-to-$450 million was low, and that the actual charge would be upwards of $630 million" and "reduced its earnings expectations for 1999 and 2000." Id. ¶ 69.

- On October 12, 1999, after *The Wall Street Journal* published its article, Raytheon's stock price plummeted and the New York Stock Exchange had to temporarily halt trading in the company's shares. Raytheon's admissions regarding the true state of its businesses triggered the largest percentage drop in its stock price in two decades, with Class A shares falling 46% from $42 to $22.50 per share, and its Class B equity dropping 45% to close at $24.25. "Raytheon Stock has never truly recovered from this devastating day of trading." Id. ¶ 72.

*    *    *

Raytheon requested coverage for the ERISA Litigation under the Policy. Compl. ¶ 14; Answer ¶ 14. Federal gave notice to Raytheon declining coverage for the ERISA Litigation and filed this declaratory judgment action to obtain a judicial declaration that the Pending or Prior Exclusion bars coverage for that litigation.

III.    ARGUMENT

A.    THIS CASE SHOULD BE RESOLVED ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C).

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In resolving a motion for judgment on the pleadings, the court must accept all of the nonmovant's factual averments as true and draw all reasonable inferences in its favor. Rivera-Gomez v. Adolfo de Castro, 843 F.2d 631, 635 (1st Cir. 1988); Petricca v. City of Gardner, 194 F. Supp. 2d 1, 4 (D. Mass. 2002). Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. See Rivera-Gomez, 843 F.2d at 635; Auto Europe, L.L.C. v. Connecticut Indem. Co., No. 01-271-PH, 2002 WL 475123, at *3 (D. Me. Mar. 28, 2002). In resolving a motion for judgment on the pleadings, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the court may take judicial notice. See, e.g., Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999); Hebert Abstract Co. v. Touchstone Prop., Ltd., 914 F.2d 74, 76 (5th Cir. 1990); Gonzalez y Camejo v. Sun Life Assur. Co. of Canada, 313 F. Supp. 1011, 1012 (D.P.R. 1970).

This case clearly can be and, indeed, must be, resolved on the pleadings in accordance with foregoing standards. Under Massachusetts law, "the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 530 (Mass. 2003) (citations omitted). "[W]hen the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant." Id. at 531 (citations and

internal quotation omitted). Here, the pleadings establish as a matter of law that the Pending or Prior Exclusion bars coverage for the ERISA Action.

**B.     THE PENDING OR PRIOR EXCLUSION BARS COVERAGE FOR THE ERISA ACTION**

The Pending or Prior Exclusion excludes coverage for "any Claim . . . based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any Insured, on or prior to the Pending or Prior Date" — *i.e.,* September 15, 2000 — "or the same or any substantially similar fact, circumstance or situation underlying or alleged therein[.]" Compl., Ex. A [Policy], FLCP cl. 5(g) (emphasis added). That language is plain and unambiguous and therefore "must be given its usual and ordinary meaning." Hakim v. Massachusetts Insurers' Insolvency Fund, 675 N.E.2d 1161, 1165 (Mass. 1997); see, e.g., Zunenshine v. Executive Risk Indem., Inc., No. 97 Civ. 5525 (MBM) 1998 WL 483475, at *4 (S.D.N.Y. Aug 17, 1998) (considering similar language), aff'd, 182 F.3d 902 (2nd Cir. 1999) (table); Bensalem Township v. Int'l Surplus Lines Ins. Co., Civ. A. No. 91-5315, 1992 WL 142024, at *2 (E.D. Pa. June 15, 1992) (same), rev'd on other grounds, 38 F.3d 1303 (3d Cir. 1994); 3/ Universal TeleServices Ariz., LLC v. Zurich Am. Ins. Co., No. 001670, 2004 WL 550761, at *4-5 (Pa. Ct. Comm. Pl. Mar. 4, 2004) (same).

Here, the Pending or Prior Exclusion bars coverage as a matter of law because (1) the Prior Litigation was filed prior to the September 15, 2000 Pending or Prior Date and (2) the ERISA Litigation is based on or arises from "the same or

---

3/     The Third Circuit reversed the district court decision on other grounds but expressly agreed that the district court was correct in holding that the exclusion was unambiguous. Bensalem Township v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1312 (3d Cir. 1994).

any substantially similar fact, circumstance or situation underlying or alleged" in the Prior Litigation.

1.   The Prior Litigation is a "Suit or Other Proceeding Pending . . . Against Any Insured, on or Prior to the Pending or Prior Date."

The Pending or Prior Exclusion is triggered by "any demand, suit or other proceeding pending, or order, decree or judgment entered against any Insured, on or prior to the Pending or Prior Date set forth in Item 7 of the Declarations for this coverage section." Compl., Ex. A [Policy], FLCP cl. 5(g). Here, the Prior Litigation was filed on October 19, 1999, and was pending on and prior to the September 15, 2000 Pending or Prior Date. Moreover, the defendants in the Prior Litigation — Raytheon and its past or present directors and officers — are plainly Insureds under the Policy. See id. FLCP cl. 15 (Insureds are defined to include Raytheon, the Sponsor Organization, and "any one or more . . . natural persons serving as a past, present or future . . . director [or] officer . . . of [Raytheon]") (emphasis supplied). Indeed, although not required under the Pending or Prior Exclusion, two of those insureds — Raytheon and Caine — also are defendants in the ERISA Litigation.

Thus, the Prior Litigation is a "suit or other proceeding pending . . . against any Insured, on or prior to the Pending or Prior Date [September 15, 2000]" within the meaning of the Pending or Prior Exclusion.

2.   The ERISA Litigation is Based Upon or Arises From Facts, Circumstances or Situations That Are "The Same" as or "Substantially Similar" to Those Alleged In the Prior Litigation.

A comparison of the Amended Securities Complaint and the Amended ERISA Complaint conclusively establishes that the ERISA Litigation is "based upon, arising from, or in consequence of . . . the same or any substantially similar

fact, circumstance or situation underlying or alleged" in the Prior Litigation within the meaning of the Pending or Prior Exclusion. See id. cl. 5(g) (emphasis supplied). The assertion of different theories of relief in the ERISA Litigation and the Prior Litigation is irrelevant to the application of the exclusion: "By the unambiguous use of words as broad as 'fact,' 'circumstance' or 'situation,' it is clear that coverage does not depend upon the pleader's art but rather upon 'underlying' facts." Zunenshine, 1998 WL 483475, at *4 (emphasis added; quoting Bensalem Township, 1992 WL 142024, at *2).

Here, the ERISA Litigation and the Prior Litigation share not just "any" but numerous "fact[s], circumstance[s] and situation[s]" that are the "same" or "substantially similar." To begin with, both complaints revolve around the same core allegation: that, beginning in late 1998, Raytheon issued a series of materially false statements regarding its financial condition that inflated Raytheon's stock price, causing injury to investors who purchased at the inflated price. For example, the Amended ERISA Complaint describes the premise of the litigation as follows:

> Raytheon, since at least late-1998 and likely much earlier, has engaged in regular and recurring misrepresentation[s] concerning the financial health of several of their [sic] major products divisions, resulting in plan participants receiving an artificially inflated picture of how attractive an investment Company Stock was for their retirement savings. The results were significant losses for the Plan and its participants when the extent of such problems slowly became public.

Am. ERISA Compl. ¶¶ 1, 65. Similarly, the Amended Securities Complaint alleges:

> This case revolves around defendants' dissemination of materially false and misleading statements and omissions throughout the Class Period [beginning October 7, 1998], causing the market price of Raytheon securities to be artificially inflated at all relevant times.

Am. Sec. Compl. ¶¶ 1,30.

Moreover, both complaints make essentially the same allegations regarding the particular information that Raytheon misrepresented or concealed and the circumstances surrounding the disclosure of adverse information about the company.

a)    Both Complaints Allege Improper Recognition of Losses, Revenues and Costs at Raytheon's RE&C Division.

The Prior Litigation and the ERISA Litigation are both based in large part on allegations concerning Raytheon's improper recognition of losses, revenues, and costs at its RE&C division.  Specifically, the Amended Securities Complaint alleges that Raytheon caused RE&C to violate GAAP by, *inter alia*, failing to "record[ ] . . . losses on <u>approximately 40 major contracts in process</u>, even though RE&C management had <u>already quantified that such losses were expected</u> to result from these projects," Am. Sec. Compl. ¶¶ 39-55 (emphasis supplied), by <u>improperly</u> "<u>recogniz[ing] . . . revenues on</u> approximately 14 <u>anticipated contracts, even though</u> . . . <u>no legally binding commitments</u> had been made to RE&C," <u>id.</u> ¶ 56 (emphasis supplied), and by "<u>prematurely book[ing] costs</u> [and] . . . corresponding revenues and profits" before such costs were incurred. <u>Id.</u> ¶¶ 66-70 (emphasis supplied).

The ERISA Litigation contains virtually identical factual allegations, asserting that with respect to the RE&C division, "by August 1998, [Raytheon] had failed to take write-downs on <u>approximately forty contracts in progress</u> in which [Raytheon] had already been subject to <u>quantifiable losses</u>," Am. ERISA Compl. ¶ 80 (emphasis supplied), Raytheon "<u>improperly booked</u> tens of millions of dollars of <u>revenues on</u> at least eight <u>anticipated contracts, despite the fact that these contracts were not legally binding commitments</u>," <u>id.</u> ¶ 86 (emphasis supplied), and Raytheon "caused RECI to <u>prematurely book costs</u> on a number of its long-term contracts in progress." <u>Id.</u> ¶ 88 (emphasis supplied).

- 12 -

b)      Both Complaints Allege Raytheon's Failure to Disclose
Cost Overruns and Delays on U.S. Defense Department
Projects.

The Prior Litigation and the ERISA Litigation both allege that
Raytheon failed to disclose cost overruns and delays on numerous contracts with the
United States, including the P-3 Orion contract. Specifically, the Prior Litigation
alleges that Raytheon knew but failed to disclose that "a number of the Company's
<u>key government defense projects and contracts were materially behind schedule and
over-budget</u>," including the <u>P-3 Orion contract between Raytheon Aircraft
Corporation and the United States Navy</u>. Am. Sec. Compl. ¶¶ 2, 71-98, 103-107
(emphasis supplied). The Amended ERISA Complaint similarly alleges that
Raytheon failed to disclose that "[a]pproximately a dozen of [Raytheon's] <u>fixed-price
Department of Defense contracts were over budget and behind schedule</u>." Am.
ERISA Compl. ¶ 68 (emphasis supplied), and specifically identifies delays and cost
overruns associated with the <u>P-3 Orion contract between the U.S. Navy and
Raytheon Aircraft Corporation</u>. See <u>id.</u> ¶¶ 94-104.

c)      Both Complaints Allege Raytheon's Failure to Disclose a
Shortage of Skilled Engineers.

The Prior Litigation and the ERISA Litigation both allege that
Raytheon failed to disclose that it was experiencing a shortage of skilled engineers
that was affecting the company's ability to complete its projects on time.
Specifically, the Amended Securities Complaint alleges that Raytheon knew but
failed to disclose that it "<u>was suffering from a critical shortage of skilled engineers
required to satisfy its government contracts</u>." Am. Sec. Compl. ¶ 2 (emphasis
supplied); <u>see also</u> <u>id.</u> ¶¶ 99-102. Similarly, the Amended ERISA Complaint alleges
that Raytheon failed to disclose that it "'had been plagued for some time by a
<u>shortage of quality software engineers</u> to work on revenue-producing programs, and

<u>faced the likelihood of not being able to complete 1999 orders.</u>'" Am. ERISA Compl. ¶ 68 (emphasis supplied).

      d)      **Both Complaints Allege Inaccuracies in Raytheon's August 1999 10-Q and Related Statements.**

The Prior Litigation and the ERISA Litigation both allege that the company's August 1999 10-Q and related statements contained material misrepresentations on numerous subjects. The Prior Litigation alleges that Raytheon's <u>August 1999 10-Q</u> and other "statements regarding [Raytheon's] and RE&C's 1999 second quarter results . . . (including the financial statements contained therein) were <u>materially false and misleading</u> in that [Raytheon] and RE&C failed to disclose millions of dollars of losses and write-downs required under GAAP and prematurely recognized millions of dollars of profits on accelerated costs and revenues." Am. Sec. Compl. ¶¶ 134-141 (emphasis supplied). The Amended ERISA Complaint also alleges that Raytheon's <u>August 1999 10-Q</u> and related statements were "<u>inaccurate, incomplete and misleading.</u>" Am. ERISA Compl. ¶ 68 (emphasis supplied).

      e)      **Both Complaints Allege that Raytheon's Stock Price Plummeted Following Adverse Disclosures in October 1999.**

The Prior Litigation and the ERISA Litigation both contain allegations regarding the precipitous drop in Raytheon's stock price following the publication of an investigative article in *The Wall Street Journal* on October 12, 1999, that provided details regarding Raytheon's failure to disclose material information, and Raytheon's subsequent issuance of a press release stating that the company would be taking additional pre-tax charges. <u>See, e.g.,</u> Am. Sec. Compl. ¶¶ 143-147; Am. ERISA Compl. ¶¶ 69-72. Both complaints describe the price drop in similar fashion. <u>See</u> Am. Sec. Compl. ¶¶ 2, 144, 147 (after the publication of *The Wall Street Journal*

article on October 12, 1999, the New York Stock Exchange temporarily halted trading of Raytheon's stock, and after the halt, the price of Raytheon's two classes of common stock declined from 44%-50% from the previous day "and has remained depressed") (emphasis supplied); Am. ERISA Compl. ¶ 72 (on October 12, 1999, the New York Stock Exchange had to halt trading in the company's shares; after the halt, Raytheon's stock price plummeted by about 45% or 46% from the previous day for the two classes of shares; and "Raytheon Stock has never truly recovered from this devastating day of trading") (emphasis supplied).

f)    Both Complaints Allege Misconduct in Connection with Raytheon's Sale of Its RE&C Division.

The Prior Litigation and the ERISA Litigation also both make allegations concerning the sale of Raytheon's RE&C division and the financial problems leading up to the sale. See Am. ERISA Compl. ¶¶ 73-93, 108-135; Am. Sec. Compl. ¶¶ 36-50. With respect to the sale of RE&C, the Amended ERISA Complaint addresses at length litigation filed against Raytheon in March 2001 by Washington Group International, Inc. ("WGI"), the purchaser of RE&C, and a subsequent securities class action filed against Raytheon by WGI shareholders. See Am. ERISA Compl. ¶¶ 119-136. The Amended Securities Complaint does not address the WGI litigation (because the Amended Securities Complaint predates the WGI litigation), but the RE&C financial problems identified in the Amended ERISA Complaint as the basis for the WGI litigation are described in similar terms by the Amended Securities Complaint. In particular, both complaints refer to RE&C's losses and Raytheon management's expectation of continued RE&C losses, see Am. ERISA Compl. ¶¶ 108-110; Am. Sec. Compl. ¶¶ 38-39, RE&C's use of internal "Executive Summary Reports" to manipulate financial information, see Am. ERISA Compl. ¶¶ 111-114; Am. Sec. Compl. ¶¶ 39-41, and the eventual sale of RE&C in April 2000. See Am. ERISA Compl. ¶¶ 109, 115-117; Am. Sec. Compl.

¶ 159.   Moreover, the mere fact that there are additional allegations in subsequently filed litigation does not affect the applicability of the Pending or Prior Litigation Exclusion. See, e.g., Bensalem Township, 1992 WL 142024, at *2.

*     *     *

In sum, the ERISA Litigation is based on or arises from not only one, but numerous "fact[s], circumstance[s] or situation[s]" that are the "same" as or "substantially similar" to those "underlying or alleged" in the Prior Litigation. Those same or substantially similar facts, circumstances or situations include, but are by no means limited to, Raytheon's alleged issuance beginning in late 1998 of statements that allegedly misrepresented its financial condition and inflated its stock price; Raytheon's alleged improper recognition of losses, revenues, and costs at RE&C; alleged cost overruns and delays in Raytheon's U.S. Defense Department projects; an alleged shortage of skilled engineers; Raytheon's August 1999 10-Q and other allegedly inaccurate financial disclosures; Raytheon's sale of its RE&C division; and the steep drop in Raytheon's stock price following adverse disclosures in October 1999.

Therefore, the undisputed facts and the plain and unambiguous terms of the Policy establish that, as a matter of law, the Pending or Prior Exclusion bars coverage for the ERISA Litigation.

IV.    CONCLUSION

   For all the foregoing reasons, Federal respectfully requests that the Court grant its Motion for Judgment on the Pleadings and enter judgment declaring that Federal has no liability under the Policy with respect to the ERISA Litigation.


             Respectfully submitted,

             *Kurt B Gerstner NNS*
             Richard P. Campbell (BBO 071600)
             Kurt B. Gerstner (BBO 190130)
             Na Na Shin (BBO 651186)
             CAMPBELL CAMPBELL EDWARDS
             & CONROY, P.C.
             One Constitution Plaza, Third Floor
             Boston, Massachusetts 02129
             (617) 241-3000
             (617) 241-5115 (fax)

             David J. Hensler
             David Newmann
             Ellen S. Kennedy
             HOGAN & HARTSON, L.L.P.
             555 Thirteenth Street, N.W.
             Washington, D.C.  20004-1109
             (202) 637-5600
             (202) 637-5910 (fax)

Dated:  June 1, 2004

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document on all parties on June 2, 2004, by mailing a copy, via first class U.S. Mail, to:

Windy L. Rosebush, Esq.
John D. Hughes, Esq.
Edwards & Angel LLP
101 Federal Street
Boston, MA 02110

James F. Kavanaugh, Jr., Esq.
Stephen S. Churchill, Esq.
Johanna L. Matloff, Esq.
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
Ten Post Office Square
Boston, MA 02109

James Gillespie, Esq.
Ryan Phair, Esq.
Thomas Yannucci, Esq.
Kirkland & Ellis
655 Fifteenth St., N.W.
Suite 1200
Washington, DC 20005

Na Na Shin