UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AXIS SURPLUS INSURANCE COMPANY,<br><br>and<br><br>FEDERAL INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>RAYTHEON COMPANY<br><br>Defendant. | Civil Action No. 04-10432-RGS<br><br>CONSOLIDATED WITH<br>Civil Action No. 03-11800-RGS<br><br>Judge Richard G. Stearns |

### RAYTHEON COMPANY'S CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

James P. Gillespie
Eric B. Wolff
Ryan P. Phair
**KIRKLAND & ELLIS, LLP**
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone:   (202) 879-5000
Facsimile:    (202) 879-5200

James F. Kavanaugh, Jr. (MA Bar # 262360)
Johanna L. Matloff (MA Bar #655178)
**CONN KAVANAUGH ROSENTHAL PEISCH
  & FORD, LLP**
Ten Post Office Square
Boston, Massachusetts 02109
Telephone:   (617) 482-8200
Facsimile:    (617) 482-6444

*Counsel for Defendant Raytheon Company*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT..................................................................................................................................5

I.      Plaintiffs Cannot Demonstrate That This Case Is Ultimately Justiciable And Amenable To Declaratory Judgment On The Pleadings Alone. ..........................................7

II.     Judgment On The Pleadings Is Inappropriate Given The Recognized Need For Further Factual Development In Cases Such As This. .....................................................10

III.    Granting All Inferences To Defendants, Federal And Axis Cannot Establish From The Pleadings That All Of The ERISA Litigation Falls Within The Prior Litigation Exclusions. ..................................................................................................13

CONCLUSION.............................................................................................................................18

## Table of Authorities

                                                                                  **Page**

**Cases**

*Aetna Cas. & Sur. Co. v. Cont'l Cas. Co.*,
413 Mass. 730, 604 N.E.2d 30 (1992) .................................................................... 14

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227 (1937) ..................................................................................................... 7

*Bensalem Township v. International Surplus Lines Ins. Co.*,
Civ. A. No. 91-5315, 1992 WL 142024 (E.D. Pa. June 15, 1992) .............................. 11, 12

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ..................................................................................................... 3

*Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*,
220 F.3d 1 (2000) ......................................................................................................... 6

*Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*,
90 F.3d 671 (2d Cir. 1996) ....................................................................................... 9, 13

*David v. Am. Home Assuarance Co.*,
No. 95 Civ. 10290, 1997 WL 160367 (S.D.N.Y. Apr. 3, 1997) .......................... 11, 12, 13

*DeNovellis v. Shalala*,
124 F.3d 298 (1st Cir. 1997) ................................................................................... 8, 10

*Donahue v. City of Boston*,
304 F.3d 110 (1st Cir. 2002) ....................................................................................... 7

*Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.*,
682 F.2d 12 (1st Cir. 1982) ........................................................................................ 13

*Gateway Group Advantage, Inc. v. McCarthy*,
300 F. Supp. 2d 236 (D. Mass. 2003) .................................................................... 11, 12

*Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass.
275, 675 N.E.2d 1161 (1997) ...................................................................................... 6

*Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*,
439 Mass. 387 N.E.2d 522 (Mass. 2003) .................................................................. 15

*Hoechst Celanese Corp. v. Liberty Mut. Ins. Co.*,
No. 90-4369, 1999 WL 20522 (Mass. Super. Ct. Nov. 24, 1998) ............................. 9

*Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*,
623 A.2d 1133 (Del. Super. Ct. 1992) ........................................................................ 9

*Home Ins. Co. v. Spectrum Info. Techs., Inc.*,
    930 F. Supp. 825 (E.D.N.Y. 1996) .................................................................................. 11

*In re Waste Mgmt., Inc., Sec. Litig.*,
    2003 WL 1463585 (N.D. Ill. Mar. 19, 2003) ..................................................................... 9

*In re Worldcom, Inc.*,
    263 F. Supp. 2d 745 (S.D.N.Y. 2003) ............................................................................. 10

*Kuper v. Iovenko*,
    66 F.3d 1447 (6th Cir. 1995) ........................................................................................... 15

*Lalonde v. Textron, Inc.*,
    369 F.3d 1 (1st Cir. 2004) ............................................................................ 1, 13, 14, 15

*Liberty Mut. Ins. Co. v. Metro. Life Ins. Co.*,
    260 F.3d 54 (1st Cir. 2001) ........................................................................................ 7, 13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................................ 8

*McCuen v. Am. Cas. Co.*,
    946 F.2d 1401 (8th Cir. 1991) ......................................................................................... 13

*Metallized Prods., Inc. v. Travelers Ins. Co.*,
    No. MICV 200203452, 2003 WL 22481398 (Mass. Super. Sept. 17, 2003) .................... 14

*Milton v. Van Dorn Co.*,
    961 F.2d 965 (1st Cir. 1992) ............................................................................................ 3

*Moench v. Robertson*,
    62 F.3d 553 (3d Cir. 1995) ............................................................................................. 15

*Mt. Airy Ins. Co. v. Greebaw*,
    127 F.3d 15 (1st Cir. 1997) ............................................................................................ 14

*Narath v. Executive Risk Indem., Inc.*,
    Civ. A. No. 01-10122, 2002 WL 924231 (D. Mass. Mar. 14, 2002) ............................... 11

*Nashua Corp. v. Liberty Mut. Ins. Co.*,
    Civ. A. No. 94-2227A, 1997 WL 89163 (Mass. Super. Feb. 18 1997) ............................ 14

*Palermo v. Fireman's Fund Ins. Co.*,
    42 Mass. App. Ct. 283, 676 N.E.2d 1158 (1997) ........................................................... 14

*Pustell v. Lynn Pub. Schs.*,
    18 F.3d 50 (1st Cir. 1994) ................................................................................................ 7

*Raytheon Co. v. Continental Cas. Co.*,
    123 F. Supp. 2d 22 (D. Mass. 2000) ............................................................................ 9, 11

*Raytheon Securities Litig.,*
    157 F. Supp. 2d 131 (D. Mass 2001) .................................................................. 3, 4

*Rivera-Gomez v. de Castro,*
    843 F.2d 631 (1st Cir. 1988) ...................................................................................... 6

*Sierra Club v. EPA,*
    292 F.3d 895 (D.C. Cir. 2002) .................................................................................. 8

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .................................................................................................... 7

*Sterilite Corp v. Continental Casualty Co.,*
    17 Mass. App. Ct. 316, N.E.2d 338 (1983) .......................................................... 16

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002) ............................................................................................ 1, 13

*United States v. Evans-Garcia,*
    322 F.3d 110 (1st Cir. 2003) .................................................................................. 16

*Vappi & Co. v. Aetna Cas. & Sur. Co.,*
    348 Mass. 427, 204 N.E.2d 273 (1965) ................................................................... 6

*Whitworth v. Ciles Offshore Corp.,*
    Civ. A. No. 92-1504. 1993 WL 177186 (E.D. La. 1993) .................................... 17

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ............................................................................................ 7, 10

*Zunenshine v. Executive Risk Indemnity, Inc.,*
    No. 97 Civ. 5525, 1998 WL 483475 (S.D.N.Y. Aug. 17, 1998) ............ 11, 12, 13, 17

**Statutes**

28 U.S.C. § 2201(a) ............................................................................................................ 7

**Other Authorities**

Aaron Lucchetti, *Tough Sell: Lighten Up on Employer Stock,*
    Wall St. J., Apr. 11, 2003, at C1 ............................................................................. 15

Susan J. Stabile, *Another Look at 401(k) Plan Invs. in Employer Sec.,*
    35 J. Marshall L. Rev. 539, 546 (Summer 2002) ................................................. 15

Susan J. Stabile, *Pension Plan Invs. in Employer Sec.:*
    *More is Not Always Better*, 15 Yale J. on Reg. 62, 77 (1998) ............................ 15

Raytheon Company ("Raytheon") paid plaintiff-insurers Federal Insurance Company ("Federal") and Axis Surplus Insurance Company ("Axis") (collectively, "Insurers") more than $190,000 to buy insurance for claims made during specified periods between 2002 and 2003. In May 2003, a sprawling class action was filed against Raytheon under the Employee Retirement Income Security Act ("ERISA"). The ERISA complaint alleges breaches of fiduciary duty from October 1998 to the present day, and some of the claims relate entirely to the design of Raytheon's ERISA plan.

The Insurers have refused to provide Raytheon with insurance — claiming the ERISA Complaint wholly derives from a securities fraud action filed in 1999. But the securities fraud action only had a class period from October 1998 to October 1999; and it did not even mention — much less allege anything was wrong with — Raytheon's ERISA plan. There is some overlap between the two actions as to particular claims. The Insurers seek to parlay that partial overlap into judgment on the pleadings — thereby allowing them to pocket the $190,000 in Raytheon premiums while dodging coverage obligations. In so doing, the Insurers attempt to tie the coverage issue entirely to a subset of allegations in the ERISA Complaint, even though plan-design claims are clearly unrelated to the Securities Complaint, and other claims may or may not be related, depending upon how the ERISA plaintiffs choose to develop their case. The ERISA plaintiffs will be entitled to "any set of facts that [can] be proved consistent with the allegations." *Lalonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

The motion for judgment seeks a premature determination of coverage based upon a premature measure of the ERISA Complaint. To deny plaintiffs' motion for judgment on the pleadings, the Court need not conclude that Raytheon is entitled to insurance coverage.

Rather, the Court need only conclude that declaratory relief at this stage of the proceedings is imprudent. Plaintiffs' imprudence is manifest.

*First*, nothing in the pleadings demonstrates that Federal or Axis faces a likelihood of payment under the policies, which means that the Insurers cannot establish justiciability of the motion for judgment on the pleadings and entitlement to declaratory relief. *Second*, coverage disputes such as this require factual development and are rarely resolved on the pleadings. Discovery is warranted on several fronts, including the insurance coverage practices of Federal and Axis on similar claims. *Finally*, construing the exclusions from coverage and factual inferences in favor of Raytheon (as they must be here), there is no basis for judgment on the pleadings. The ERISA Complaint contains challenges that are clearly independent of the securities fraud action, particularly as applied to ERISA plaintiffs alleging claims after the close of the securities fraud class period. For example, the challenges to the design of Raytheon's ERISA plan — *e.g.*, the general diversity of its investments and the independence of its fiduciaries — are plainly not related to the securities fraud action.

Accordingly, the Insurers' motions for judgment on the pleadings should be denied.

## BACKGROUND

On October 19, 1999, a putative federal securities fraud class action was filed against Raytheon in the U.S. District Court for the District of Massachusetts. That action was consolidated with other putative securities fraud class actions on June 12, 2000, No. 99-12142 (PBS) (hereinafter "Securities Complaint"). As summarized by the district court upon consideration of Raytheon's motion to dismiss, "[l]ead plaintiff, the New York State Common Retirement Fund, brings this securities action against Raytheon Company, various individual corporate officers, and the accounting firm PricewaterhouseCoopers LLP, alleging a fraudulent

2

scheme that injured purchasers of Raytheon common stock between October 7, 1998 and October 12, 1999." *In re Raytheon Securities Litig.*, 157 F. Supp. 2d 131, 136 (D. Mass 2001) (granting motion to dismiss in part, denying in part). A jury trial was scheduled to proceed on May 24, 2004, but on May 25, 2004, the parties reported a settlement to the Court.

On or about May 19, 2003, a putative class action on behalf of Raytheon employees and retirees alleging breach of fiduciary counts under ERISA was filed against Raytheon in the U.S. District Court for the District of Massachusetts. That action was consolidated with another putative ERISA class action, and on April 22, 2004, the Second Consolidated Amended Complaint was filed, No. 03CV10940 (hereinafter "ERISA Complaint"). The ERISA Complaint is a putative class action purportedly on behalf of "[a]ll person who were participants in or beneficiaries of the [Raytheon Savings and Investment] Plan at any time between October 7, 1998 and the present (the 'Class Period') and whose accounts included investments in Raytheon Stock." ERISA Compl. ¶ 56. That class period — extending to the present — differs from the Securities Complaint class period, which ends October 12, 1999.[1] The ERISA Complaint names as defendants Raytheon (*Id.* ¶¶ 14-16), the Raytheon Pension and Investment Group (*Id.* ¶¶ 17-19), the Raytheon Investment Committee (*Id.* ¶¶ 20-21), and seven members of the Raytheon Investment Committee (*Id.* ¶¶ 22-28).

---

[1] The ERISA class is different in another important respect. It purports to include "participants in or beneficiaries of" the ERISA plan during the class period. That putative class apparently would include anyone in the plan with company stock, whether or not that person bought Raytheon stock during the class period. For example, the ERISA class could include someone who last purchased Raytheon stock years before October 1998 but continued to hold it in their plan into the ERISA class period. The Securities Complaint, by contrast, can only include persons who ***purchased*** Raytheon stock during the class period because, under well-settled securities law, "Rule 10b-5 implies a private cause of action for damages on the part of ***securities purchasers*** and sellers injured by its violation." *Milton v. Van Dorn Co.*, 961 F.2d 965, 968 n.4 (1st Cir. 1992) (emphasis added); *see generally Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 732-749 (1975).

The ERISA Complaint alleges four breach of fiduciary duty counts against defendants: [1] failure to manage prudently and loyally plan assets, including continuing "to offer the Raytheon Stock as an investment option for the Plan and to direct and approve Plan investment in Raytheon Stock, instead of in cash or other investments" (*Id.* ¶ 167); [2] failure to monitor the Pension and Investment Group, the Committee, and individual defendants and provide them with accurate information, including *inter alia*, "failing to ensure that the monitored fiduciaries appreciated the huge risk inherent in the significant investment by rank and file employees in an undiversified employer stock fund" (*Id.* ¶ 180); [3] failure to provide complete and accurate information to plan participants and beneficiaries, including "failing to provide complete and accurate information regarding Raytheon Stock, Raytheon's business improprieties, public misrepresentations and material accounting irregularities, and the consequent artificial inflation of the value of Raytheon Stock" (*Id.* ¶ 191); [4] breach of duty to avoid conflicts of interest, including "failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in Raytheon Stock" (*Id.* ¶ 200).

Raytheon paid Federal $125,000 for Executive Protection Policy No. 8151-5319, to buy insurance against claims made during a policy period from September 15, 2002 to September 15, 2003. Federal Compl. ¶ 6. The deductible for the Federal policy is $500,000 per loss. Federal Compl., Exh. A, Declarations. Raytheon paid Axis $68,149 for SecurExcess Policy No. EBN599676, to buy insurance against claims made during a policy period February 20, 2003 to September 15, 2003. Axis Compl. ¶ 6. The Axis policy applies in "excess of all applicable Underlying Insurance." Axis Compl. ¶ 8.

After accepting service of the ERISA Complaint, Raytheon promptly requested insurance coverage from Federal. On September 17, 2003, Federal refused to provide coverage

and filed a complaint seeking a declaration of no coverage, *Federal Insurance Co. v. Raytheon Co.*, 03-CV-11800 (consolidated with *Axis Surplus Ins. v. Raytheon Co.*, 04-CV-10432, on Apr. 13, 2004). Federal's basis for denial was a "prior litigation" exclusion from coverage for claims "based upon, arising from, or in consequence of any demand, suit or other proceeding pending ... or the same or any substantially similar fact, circumstance or situation underlying or alleged therein." Federal Compl. ¶ 9.

Raytheon requested coverage of the ERISA Complaint from Axis on May 29, 2003. On March 2, 2004, Axis refused to provide coverage, and the following day Axis filed a complaint seeking a declaration of no coverage, *Axis Surplus Ins. Co. v. Raytheon Co.*, 04-CV-10432. Axis's basis for denial was a "prior litigation" exclusion from coverage for claims "based upon, arising from, or attributable to ... any demand, suit or other proceeding pending ... prior to September 15, 2000, or any wrongful act, fact, circumstance or situation underlying or alleged therein; or ... causally or logically interrelated by a common nexus." Axis Compl. ¶ 12.

After Raytheon answered each Insurers Complaint, Federal and Axis independently moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and filed separate supporting memoranda. In view of the similarities between the Insurers briefs, Raytheon submits this Consolidated Opposition.

## ARGUMENT

The Insurers' motions for judgment on the pleadings fail for three independent reasons. *First*, the pleadings cannot support judgment because they do not adequately demonstrate justiciability. The Court can only enter a judgment on the merits if satisfied that there is subject matter jurisdiction and justiciability. Plantiffs have *alleged* an actual controversy, but to support judgment plaintiffs must demonstrate likelihood that defendants

would require coverage above deductibles and by way of excess insurance. Plaintiffs cannot support such a showing on the pleadings.

*Second*, a motion for judgment on the pleadings is "an extremely early assessment of the merits of the case." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988). Plaintiffs offer not a single case in support of determining coverage on an insurer's motion for judgment on the pleadings. Given the ambiguity of "prior litigation" exclusion clauses and the factual development necessary to determine whether two lawsuits are sufficiently related to one another to warrant exclusion from coverage, the available decisions are (unsurprisingly) summary judgment decisions. Determining whether the sprawling securities and ERISA class actions at issue in this case are sufficiently related to warrant total exclusion of coverage cannot credibly be an exception to the considered preference for summary judgment.

*Finally*, "'[e]xclusions from coverage are to be strictly construed,' and any ambiguity in the exclusion 'must be construed against the insurer.'" *Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass. 275, 282, 675 N.E.2d 1161, 1165 (1997) (quoting *Vappi & Co. v. Aetna Cas. & Sur. Co*, 348 Mass. 427, 431, 204 N.E.2d 273, 276 (1965)); *see also Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4 (2000). With respect to the pleadings, "the trial court must accept all of the nonmovant's well-pleaded factual averments as true ... and draw all reasonable inferences in his favor." *Rivera-Gomez*, 843 F.2d at 635. Plaintiffs have failed to demonstrate that — construing the exclusion clauses and all inferences from the pleadings in Raytheon's favor — each and every claim in the ERISA Complaint is sufficiently related to the Securities Complaint that "it appears beyond doubt that [defendant] can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks omitted).

6

The ERISA Complaint includes breach of fiduciary duty claims up to the present day, long after the close of the class period in the Securities Complaint in October 1999. Some claims challenge the structure of Raytheon's ERISA plan — for a general lack of investment diversification and a lack of independent fiduciary oversight — and are pleaded entirely independent of the Securities Complaint. Other ERISA claims *could* be based upon some of the underlying facts alleged in the Securities Complaint, but those allegations are pleaded so ambiguously that it is too soon to determine what theories the ERISA plaintiffs intend to pursue. Based upon the pleadings, Federal and Axis cannot disclaim a duty to defend such claims, and "[i]n Massachusetts, as elsewhere, an insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint." *Liberty Mut. Ins. Co. v. Metro. Life Ins. Co.*, 260 F.3d 54, 63 (1st Cir. 2001).

I.  **Plaintiffs Cannot Demonstrate That This Case Is Ultimately Justiciable And Amenable To Declaratory Judgment On The Pleadings Alone.**

"[T]his Court must resolve questions pertaining to its subject-matter jurisdiction before it may address the merits of a case." *Donahue v. City of Boston*, 304 F.3d 110, 117 (1st Cir. 2002); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998). To that end, Federal and Axis bear the burden of demonstrating that a ripe "case or controversy" exists sufficient to satisfy both Article III and the Declaratory Judgment Act, 28 U.S.C. § 2201(a). *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). The Court also has an independent obligation to assess its own jurisdiction. *Pustell v. Lynn Pub. Schs.*, 18 F.3d 50, 51-52 & n.1 (1st Cir. 1994). Further, the grant of declaratory relief under the Declaratory Judgment Act rests within the Court's discretion, even when a dispute is justiciable. 28 U.S.C. § 2201(a) ("any court of the United States ... *may* declare the rights and other legal relations of any interested party") (emphasis added); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("In the declaratory