judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."); *DeNovellis v. Shalala*, 124 F.3d 298, 314 (1st Cir. 1997) ("DeNovellis has no entitlement to a declaratory judgment[.]"). The pleadings here do not establish the ultimate justiciability of this case, much less that the grant of declaratory relief on the pleadings would be wise judicial administration.

As an initial matter, the Insurers purport to present a ripe "case or controversy" merely with the allegations that Raytheon has requested coverage of the ERISA litigation, and also the conclusory allegation that an actual and justiciable controversy exists. Federal Compl. ¶¶ 14, 20; Axis Compl. ¶¶ 17, 28. Those allegations may suffice to survive a motion to dismiss under Rule 12(b)(1) because "each element [of justiciability] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). However, if a plaintiff is moving for final judgment, as the Insurers are, then a plaintiff "can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts." *Id.* (internal quotations omitted); *see Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002). Federal and Axis cannot establish justiciability under this standard.

First, payment under either of plaintiffs' policies is not automatic even when coverage is established. The Federal policy has a deductible of $500,000. Federal Compl., Exh. A, Page 5 of 10. The Axis policy is excess insurance. Axis Compl. ¶ 8. It is insufficient, for purposes of justiciability, that Raytheon requested coverage because coverage is obviously contingent upon exhaustion of deductibles or primary insurance. Raytheon may request

coverage in the event that it may need coverage, but actual coverage depends upon the events in the ERISA litigation, which remains at the pleading stage. Plaintiffs have no allegations regarding the actual possibility of payment under the policies.

Where there is no demonstrated likelihood that insurance will be utilized, justiciability is lacking and adjudication on the merits is improper. *See, e.g., Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 675 (2d Cir. 1996) (affirming dismissal of declaratory judgment action brought by excess insurer were "there was no practical likelihood that St. Joe's liability would reach the layers of its excess insurance"); *see also Hoechst Celanese Corp. v. Liberty Mut. Ins. Co.*, No. 90-4369, 1999 WL 20522, at *2 (Mass. Super. Ct. Nov. 24, 1998); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1133, 1137 (Del. Super. Ct. 1992). Plaintiffs have not alleged any practical likelihood that their policies will be reached, and plaintiffs must plead **and prove** such a likelihood to be entitled to judgment in their favor. "[P]roceeding with discovery will determine whether Raytheon is 'reasonably likely' to reach the excess polices," *Raytheon Co. v. Continental Cas. Co.*, 123 F. Supp. 2d 22, 31 (D. Mass. 2000), and until that fact can be established, the Insurers have not demonstrated their entitlement to **justiciability**, much less **judgment**.

Second, if Federal and Axis are correct about the nature of the ERISA litigation — that it is wholly derivative of the earlier securities class action — then Raytheon may be able to defend successfully against a large number of the ERISA plaintiffs (who were members of the class in the securities class), which diminishes the likelihood of ever reaching the Federal and Axis insurance policies. Some courts have recognized that permitting ERISA breach of fiduciary claims in the wake of a securities fraud recovery would amount to double recovery. *See In re Waste Mgmt., Inc., Sec. Litig.*, 2003 WL 1463585, at *2 (N.D. Ill. Mar. 19, 2003). However,

9

some courts have emphasized the independence of the two claims. *See In re Worldcom, Inc.*, 263 F. Supp. 2d 745, 765 (S.D.N.Y. 2003). At this point in the proceedings in the ERISA litigation, it is premature to speculate whether the Insurers' view of the ERISA litigation will prevail. If it were to prevail, Raytheon may not require coverage under either policy.

Finally, even if the Insurers were able to clear the hurdle of justiciability, much less the merits, entry of a declaratory judgment remains a matter discretion. *See Wilton*, 515 U.S. at 288; *DeNovellis*, 124 F.3d at 314. Given all of the contingencies that bear upon the coverage questions presented by the Insurers, and in particular the inchoate nature of the ERISA Compl. (as discussed further below), entry of a declaratory judgment on the pleadings in this case is not a prudent exercise of judicial discretion.

## II.     Judgment On The Pleadings Is Inappropriate Given The Recognized Need For Further Factual Development In Cases Such As This.

A motion for judgment on the pleadings is not well-suited for resolving whether two massive class actions filed against Raytheon are so substantially the same that the first lawsuit completely precludes Raytheon from getting any benefit from the insurance coverage for which it paid on the second lawsuit. The ERISA Complaint is 67 pages and 248 paragraphs and alleges breaches of fiduciary duties beginning October 7, 1998 and continuing to this day. ERISA Compl. ¶¶ 8, 90. The Securities Complaint is 116 pages and 236 paragraphs and alleges securities fraud between October 7, 1998 and October 12, 1999. Securities Compl. ¶ 1. As one district court has observed in rejecting the type of peremptory declaration of exclusion that plaintiffs urge: "the examination and comparison of the relevant complaints to determine their similarities and distinctions involve issues of fact that are not properly resolved on a motion to dismiss ... [t]he presence of a significant degree of ambiguity requires that the parties at least be permitted to conduct some discovery into the meaning of the exclusion at issue before I

determine the question of coverage." *David v. Am. Home Assuarance Co.*, No. 95 Civ. 10290, 1997 WL 160367, at *3 (S.D.N.Y. Apr. 3, 1997); *see also Narath v. Executive Risk Indem., Inc.*, Civ. A. No. 01-10122, 2002 WL 924231 (D. Mass. Mar. 14, 2002) (Zobel, J.) (deferring ruling on applicability of pending litigation and prior notice exclusion in insurance policy until discovery was complete); *Home Ins. Co. v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825, 850-51 (E.D.N.Y. 1996) (denying summary judgment because of need for "additional factual development").

Plaintiffs' principal cases are not to the contrary. The Insurers rely heavily upon *Gateway Group Advantage, Inc. v. McCarthy*, 300 F. Supp. 2d 236 (D. Mass. 2003), *Zunenshine v. Executive Risk Indemnity, Inc.*, No. 97 Civ. 5525, 1998 WL 483475 (S.D.N.Y. Aug. 17, 1998), and *Bensalem Township v. International Surplus Lines Ins. Co.*, Civ. A. No. 91-5315, 1992 WL 142024 (E.D. Pa. June 15, 1992). First, as to justiciability, all three cases were brought by the ***insured*** seeking a declaration of coverage. The existence of a ripe controversy is bolstered when the insured maintains that a declaration of rights is necessary, as opposed to cases where "the ***insured*** took the position that the dispute was not ready for adjudication and that its liability would not reach the levels of the excess policies." *Raytheon Co. v. Continental Cas. Co.*, 123 F. Supp. 2d at 31 (emphasis in original).

More significantly, both *Gateway* and *Zunenshine* were decided on summary judgment. In *Gateway*, the determination that prior litigation was "related" was "supported by the deposition testimony of Gateway and IHA personnel." *Gateway*, 300 F. Supp. 2d at 244. In *Zunenshine*, the district court relied more heavily upon the allegations in the complaints, but it was the insured that chose to emphasize the differences in the complaints in the absence of any "judicial determination of liability in the underlying lawsuits." *Zunenshine*, 1998 WL 483475, at

11

*4. Further, *Zunenshine* was not a particularly close case. The two lawsuits in *Zunenshine* plainly arose exclusively from the same alleged misrepresentations. One was a noteholder action, and the other was a shareholder action. *Id.* at *2. The insured feebly emphasized the difference in the complaining parties and in the allegations about when and where the misrepresentations were made. *Id.* at *5. In response, the district court emphasized that the policy exclusion did not require the lawsuit to be "precisely the same" or "identical." *Id.* at *5. As discussed further below, the differences between the Raytheon Securities Complaint and the ERISA Complaint are hardly so marginal.

*Bensalem Township* is the rare exclusion case decided on a motion to dismiss. *Cf. David*, 1997 WL 160367, at *3 ("[C]ounsel for defendant has been unable to point to a single case resolving the applicability of a prior litigation exclusion in the context of a motion to dismiss."). Unfortunately for plaintiffs, the dismissal in *Bensalem Township* was reversed on appeal precisely because the district court "should have allowed discovery to enable it to review the circumstances surrounding the insurance agreement in order to determine whether Township might have had a reasonable expectation of coverage in this situation despite the language of the policy[.]" *Bensalem Township v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1312 (3d Cir. 1994).

Raytheon is entitled to at least the same opportunity for factual development as occurred in *Gateway*, *Zunenshine*, and as mandated by the Third Circuit in *Bensalem Township*. Further factual development is necessary on at least three fronts:

**First, what is the proper scope of the exclusion clauses?** "[T]he exclusionary clauses at issue are not unambiguous. As other courts have held, the terms 'same,' 'essentially the same,' and 'related' are 'so elastic, so lacking in concrete content, that they import into the

12

contract ... substantial ambiguities." *David*, 1997 WL 160367, at *3 (quoting *McCuen v. Am. Cas. Co.*, 946 F.2d 1401, 1407-08 (8th Cir. 1991)). To develop a proper construction of the exclusionary clauses, "evidence of the construction given to the language by the parties and of the customary usage of persons in the same commercial setting is normally admissible." *Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 682 F.2d 12, 17 (1st Cir. 1982). On information and belief, Raytheon believes that the Insurers have provided insurance coverage for claims materially indistinguishable from the ERISA Complaint against Raytheon. ***Second, what is the degree of relatedness between the Securities Complaint and the ERISA Complaint?*** Most important, any intervening "judicial determination of liability in the underlying lawsuits," *Zunenshine*, 1998 WL 483475, at *4, would obviously assist a determination of what nexus exists between the two lawsuits. ***Finally, what is the "practical likelihood" that either Federal's or Axis's policies will be needed?*** *Certain Underwriters at Lloyd's*, 90 F.3d at 675.

### III.  Granting All Inferences To Defendants, Federal And Axis Cannot Establish From The Pleadings That All Of The ERISA Litigation Falls Within The Prior Litigation Exclusions.

The ERISA Complaint includes four separate breach of fiduciary duty counts, ERISA Compl. ¶¶ 198-238, and at the pleading stage, those counts include "any set of facts that could be proved consistent with the allegations." *Lalonde*, 369 F.3d at 6 (quoting *Swierkiewicz*, 534 U.S. at 514). If any of the ERISA claims made against Raytheon are properly covered by the excess insurance policies, or if there is at least a possibility that such claims are covered, Federal and Axis have a duty to defend against the entire ERISA lawsuit. *Liberty Mut. Ins. Co. v. Metro. Life Ins. Co.*, 260 F.3d at 63 ("It is not uncommon for a lawsuit against an insured to assert some claims that are covered by the insurance policy and others that are not. In Massachusetts, as elsewhere, an insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint."); *see also Mt. Airy Ins. Co. v. Greebaw*, 127 F.3d

13

15, 19 (1st Cir. 1997); *Aetna Cas. & Sur. Co. v. Cont'l Cas. Co.*, 413 Mass. 730, 732 n.1, 604 N.E.2d 30, 32 n.1 (1992), *Palermo v. Fireman's Fund Ins. Co.*, 42 Mass. App. Ct. 283, 289-90, 676 N.E.2d 1158, 1163 (1997); *Metallized Prods., Inc. v. Travelers Ins. Co.*, No. MICV 200203452, 2003 WL 22481398 (Mass. Super. Sept. 17, 2003); *Nashua Corp. v. Liberty Mut. Ins. Co.*, Civ. A. No. 94-2227A, 1997 WL 89163 (Mass. Super. Feb. 18 1997).

The Insurers cannot rule out possible coverage of all claims merely on the pleadings. Whereas the securities class period ended in October 1999, the ERISA plaintiffs allege that the breaches of fiduciary duty continue to the present. ERISA Compl. ¶¶ 8, 90. Thus, the ERISA plaintiffs are alleging that even after October 1999, "Defendants breached their duties to prudently and loyally manage the Plan's assets," that even today, "Defendants knew or should have known that Raytheon Stock was not a suitable and appropriate investment for the Plan." ERISA Compl. ¶ 167. These allegations may draw upon factual circumstances in common with the securities class action, but at the pleadings stage they need not. The ERISA plaintiffs are entitled to "any set of facts that could be proved consistent with the allegations," *Lalonde*, 369 F.3d at 6, and that could include claims with no nexus to the Securities Complaint.

Among the alleged breaches of fiduciary duty where Federal and Axis cannot credibly infer a connection to the Securities Complaint are the following:

- Breach of fiduciary duty for "failing to ensure that the monitored fiduciaries appreciated the huge risk inherent in the significant investment by rank and file employees in an undiversified employer stock fund." ERISA Compl. ¶ 180.

- Breach of fiduciary duty for failing "to avoid conflicts of interest and to promptly resolve them by, inter alia: failing to engage independent fiduciaries who could make independent judgments concerning the Plain's investment in the Raytheon Stock ...." ERISA Compl. ¶ 200.

- Breach of fiduciary duty for "failing to take such other steps as were necessary to ensure that participants' interest were loyally and prudently served." ERISA Compl. ¶ 200.

On their face, these allegations bear no relationship to the Securities Complaint. These allegations challenge the design of the ERISA plan — an alleged general duty to diversify and a general duty to engage independent fiduciaries — and are unrelated to the fate of Raytheon's stock.[2] In particular, if a post-October-1999 ERISA putative class member is considered, there is no conceivable connection with any of the allegations in the Securities Complaint. Since the close of the class period for the Securities Complaint (October 12, 1999) until the close of market last Friday (July 23, 2004), the value of Raytheon stock has increased just over 50 percent, as opposed to nearly a 15 percent decline of the S&P 500 during that same period. The *only* conceivable claim for a post-October-1999 ERISA plaintiff, based on the allegations above, would be a purely structural claim regarding the plan, unrelated to any of the allegations in the Securities Complaint.

The Insurers may protest that such design claims are of dubious merit, but that is irrelevant to the question of insurance coverage. Raytheon paid Federal and Axis tens of thousands of dollars for coverage against any allegations, not merely allegations of merit. *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387, 788 N.E.2d 522, 531 (Mass. 2003) ("[T]he underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts

---

[2] Alleged lack of diversification in ERISA plans has been a subject of considerable scrutiny. *See, e.g., Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995); *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995), and there is no reason to think that such allegations will not persist, *see Lalonde*, 369 F.3d at 3-6 (rejecting dismissal of lack of diversification claim). The ERISA Complaint against Raytheon exemplifies the trend. What is more, the ERISA plaintiffs will likely argue that any purported failure to diversify away from employer stock in Raytheon's Plan is supposedly especially risky to employees. *See* Susan J. Stabile, *Another Look at 401(k) Plan Invs. in Employer Sec.*, 35 J. Marshall L. Rev. 539, 546 (Summer 2002) ("Over-investment in employer securities by pension plans is even more potentially damaging than a general lack of diversification in an investment portfolio. Significant accumulation of employer securities puts all of one's eggs (present job security and future retirement security) in a single basket, which no investment adviser would recommend."); Susan J. Stabile, *Pension Plan Invs. in Employer Sec.: More is Not Always Better*, 15 Yale J. on Reg. 62, 77 (1998). *See also* Aaron Lucchetti, *Tough Sell: Lighten Up on Employer Stock*, Wall St. J., Apr. 11, 2003, at C1.

alleged in the complaint specifically and unequivocally make out a claim within the coverage."), citing *Sterilite Corp v. Continental Casualty Co.*, 17 Mass. App. Ct. 316, 319, 458 N.E.2d 338, 341 (1983). ("In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage.  There is no requirement that facts alleged in the complaint specifically and unequivocally make out a claim with coverage."), *rev'd on other grounds*, 397 Mass. 837, 494 N.E.2d 1008 (1986).  Moreover, neither Federal nor Axis pays due regard to the extended class period in the ERISA Complaint and the allegations concerning post-1999 conduct outside the Securities Complaint class period.  The ERISA plaintiffs plead numerous post-October 1999 factual allegations unrelated to any allegations in the Securities Complaint.  For example, the ERISA plaintiffs include allegations concerning the SEC's investigation of alleged violations of Regulation FD in 2002 (ERISA Compl. ¶¶ 136-39), and a subsequent SEC investigation into Raytheon's commercial aircraft unit in 2003 (ERISA Compl. ¶¶ 105-107).  The Insurers do not address these post-1999 allegations, much less explain how they are (giving Raytheon the benefit of all inferences) invariably related to the Securities Complaint.  Having offered no such explanation in support of their motion, any attempt by the Insurers to cobble together a response in reply is irrelevant.  *See United States v. Evans-Garcia*, 322 F.3d 110, 114 (1st Cir. 2003) ("Arguments raised for the first time in reply briefs are generally deemed waived.").

       To smooth over all of the obvious differences and potential differences between the Securities Complaint and the ERISA Complaint, Axis offers something of a grand (but conclusory) unified theory of the ERISA Complaint — that it "maintains that these subsequent wrongful acts were causally related to the wrongful acts that form the basis of the Prior Litigation."  Axis Memo in Supp. of Mot. for J. on the Pleadings at 7 (June 6, 2004).  The

ERISA Complaint is hardly so coherent or precise. The plan-design allegations do not rely upon any such causal relation, and the more run-of-the-mill breach of fiduciary duty claims are sufficiently ambiguous that they are susceptible of application to events after October 1999, with or without the causal relation Axis wishes were apparent on the face of the pleading.

Further, the Insurers are too dismissive of the additional defendants in the ERISA Complaint. *Zunenshine* dealt with a situation where the same essential claims, based upon the same underlying facts, were being pressed by new plaintiffs (shareholders instead of bondholders). Here, by contrast, the ERISA claims pursue new defendants, such as members of the Raytheon Investment Committee — and their inclusion fits with the ongoing breach of fiduciary duty claims and the plan-structure claims. The claims, the relevant underlying facts, and several of the defendants are new. These differences suffice to defeat a motion for judgment on the pleadings regarding a prior litigation exclusion. *See, e.g., Whitworth v. Ciles Offshore Corp.*, Civ. A. No. 92-1504. 1993 WL 177186, at *1 (E.D. La. 1993) (pending and prior exclusion did not apply to claims against different defendants in subsequent lawsuit).

## CONCLUSION

Based upon the foregoing, the motions for judgment on the pleadings by Federal and Axis should be denied.

/s/ James P. Gillespie
_____
James P. Gillespie
Eric B. Wolff
Ryan P. Phair
KIRKLAND & ELLIS, LLP
655 Fifteenth Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone:    (202) 879-5000

James F. Kavanaugh, Jr. (MA Bar # 262360)
Johanna L. Matloff (MA Bar #655178)
CONN KAVANAUGH ROSENTHAL PEISCH
   & FORD, LLP
Ten Post Office Square
Boston, Massachusetts 02109
Telephone:    (617) 482-8200
Facsimile:    (617) 482-6444