UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|                                              |   |                         |
|----------------------------------------------|---|-------------------------|
| AXIS SURPLUS INSURANCE COMPANY and FEDERAL INSURANCE COMPANY, ) ) ) ) | | |
| Plaintiffs, )                                | | |
| v.                                       ) ) | | Civil Action No. 04-CV-10432RGS |
| RAYTHEON COMPANY,                        ) ) | | |
| Defendant.                               ) ) | | |

**PLAINTIFF AXIS SURPLUS INSURANCE COMPANY'S REPLY TO DEFENDANT'S OPPOSITION TO THE MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Axis Surplus Insurance Company ("Axis") hereby submits its reply[1] to the Defendant Raytheon Company's ("Raytheon") Opposition to the Motion for Judgment on the Pleadings ("Opposition"). In addition to the arguments set forth in Axis' Motion for Judgment on the Pleadings, the Plaintiffs are entitled to Judgment on the pleadings for the following reasons:

**I.   PLAINTIFFS' CLAIMS FOR DECLARATORY JUDGMENT PRESENT AN ACTUAL, JUSTICIABLE CONTROVERSY.**

Raytheon's contention that this matter does not present a ripe "case or controversy," and thus is not justiciable, is without merit. A clear and actual controversy exists that is appropriately resolved by way of a declaratory judgment action.

Raytheon has admitted that it sought coverage for the ERISA Complaint under the respective policies issued by Federal Insurance Company ("Federal") and Axis and that coverage was denied by Federal and Axis. Answer, ¶¶ 24 and 25; Opposition, p. 4-5. Accordingly,

---

[1] Leave to file this reply is not required as the Court permitted a reply to Defendant's Opposition to the Motion for Judgment on the Pleadings in the scheduling order adopted by the Court.

Federal and Axis appropriately filed the within declaratory judgment action.  <u>All America Ins. Co. v. Broeren Russo Construction, Inc.</u>, 112 F.Supp.2d 723, 729 (C.D. Ill. 2000) (Insurer denying duty to defend must seek a declaratory judgment regarding its responsibilities under the policy.)  Raytheon cannot argue that insurance coverage is not implicated when Raytheon itself sought coverage under the policies.  Had no demand been made by Raytheon, Axis would have had no reason to seek a declaration of the parties' rights and obligations under the policies.  Thus, an actual controversy exists as to whether the ERISA Complaint is covered under the Federal and Axis policies, which controversy is properly resolved by a declaration of this Court.

In addition, Raytheon's argument on justiciability improperly focuses on whether Federal and Axis will be required to pay a judgment or settlement.  In advancing this argument, Raytheon conveniently ignores the fact that the Federal policy (and the Axis policy which follows form in this regard) is a "duty to defend" policy.  If a claim is potentially covered under the policy, the carrier's defense obligation is implicated, notwithstanding the fact that the carrier may not ultimately be obligated to pay a settlement or judgment.

Raytheon later concedes this point by arguing that "[i]f any of the ERISA claims made against Raytheon are properly covered, Federal and Axis have a duty to defend against the entire ERISA lawsuit." Opposition, p. 13.  Thus, Raytheon's argument concerning the justiciability of this matter is duplicitous and contradictory.  On the one hand, Raytheon argues that this matter is not ripe for adjudication because the coverage provided by the policies is not yet implicated, yet on the other hand, it argues that the carriers have a duty to defend the ERISA lawsuit.

In light Raytheon's own demand for coverage and the parties' undeniable dispute over whether or not coverage exists — not only as to whether Federal and Axis will ultimately be obligated to pay a settlement or a judgment, but also as to whether they are obliged in the interim

to provide a defense — there can be no legitimate argument that there is not an actual, presently existing controversy between the parties that is ripe for judicial determination by way of declaratory judgment.

Raytheon's position is discredited, ironically, by the case of Raytheon Co. v. Continental Cas. Co., 123 F.Supp. 2d 22, 30 (D.Mass. 2000) cited by Raytheon. In Raytheon Co. v. Continental, the insurer argued that Raytheon had not met the "actual controversy" requirement for a declaratory judgment action. Id. The Court disagreed finding that "the declaratory judgment statute is to be construed and applied liberally to afford relief from uncertainty with respect to rights in issue." Id. The Court went on to state that "[i]ssues of coverage under insurance policies, including questions concerning the meaning of language in an insurance policy, are often decided by means of a declaratory judgment action." Id. Because there was a dispute about the duty to defend, there was a sufficient dispute to state a claim for declaratory relief. Id.

Furthermore, the ERISA Complaint seeks damages against Raytheon for its alleged misrepresentations regarding its financial performance in order to inflate the value of its stock, resulting in the stock's devaluation and causing alleged damages to the plaintiffs in the ERISA Litigation. These alleged damages could potentially reach hundreds of millions of dollars based upon the drop in Raytheon's stock price. This potential liability if covered would clearly implicate both the Federal and Axis policies.[2]

Certainly, too, the cost to defend the litigation will be significant and alone can reasonably be anticipated to exceed Raytheon's self-insured retention. Thus, Certain

---

[2] On or about May 25, 2004, Raytheon settled the Securities Litigation, which Complaint arose out of the same allegations as the ERISA Litigation, for a reported $410 million. This Court may take judicial notice of this settlement because it occurred in a related case on this court's docket. See In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 8 (1999); Fed.R.Evid. 201.

Underwriters at Lloyd's, London v. St. Joe Mineral Corp., 90 F.3d 671, 675 (2nd Cir. 1996), cited by Raytheon in support of its position that insurance coverage likely would not be utilized, is inapposite to the present case. As the Raytheon Court pointed out "[i]n determining whether a declaratory judgment should issue with respect to parties' rights and obligations under an excess policy of insurance, there is no need for 'absolute proof' that the excess policy will be reached, the plaintiff must just show a 'reasonable likelihood that the claims will mature as to that defendant.'" Raytheon, 123 F.Supp. at 30. Axis has certainly made this showing.

Thus, for all of the foregoing reasons, it is clear that the Plaintiffs present an actual, justiciable controversy that is ripe for adjudication by this Court.

**II.     THIS CASE IS PROPERLY RESOLVED BY JUDGMENT ON THE PLEADINGS WITHOUT THE NEED FOR DISCOVERY.**

While Raytheon urges the Court to permit extensive fact discovery before making a declaration of the rights of the parties and then permit the case to go to the Summary Judgment stage, such protracted litigation is not necessary for the Court to declare the parties' rights and obligations under the respective policies. Contrary to Raytheon's argument, a Motion for Judgment on the Pleadings pursuant to Rule 12(c) is the appropriate mechanism to resolve this dispute and has been utilized by several other courts in insurance coverage disputes. See e.g. All America Ins. Co. v. Broeren Russo Construction, Inc., 112 F.Supp.2d 723, 726 (C.D. Ill. 2000) (granting liability and excess insurers' motion for judgment on the pleadings in a declaratory judgment action seeking declaration concerning policy exclusions where insurers' complaint attached the underlying complaint and the insurance policy); Valiant Ins. Co. v. Hamilton Funeral Service Centers, 926 F.Supp. 127,128-129 (W.D. Ark. 1996) (insurers who filed declaratory judgment seeking declaration that there was no coverage or duty to defend were

granted judgment on the pleadings based on the policy language); Royal Ins. Co. of America v. Sportswear Group, LLC, 85 F.Supp.2d 275, 276 (S.D.N.Y. 2000) (marine insurer brought declaratory judgment action and subsequent motion for judgment on the pleadings, which was granted after court compared the pleadings to the plain meaning of the policy).

The purpose of Rule 12(c) is to dispose of cases where the material facts are not in dispute and judgment on the merits can be made by reference to the pleadings, exhibits attached thereto, statements or documents incorporated by reference into the pleadings, and any facts of which the court can take judicial notice. All America Ins. Co., 112 F.Supp.2d at 728; Royal Ins. Co., 85 F.Supp.2d at 278. A court can consider the applicable insurance policies attached or referred to in the pleadings to rule on a dispositive motion without converting the motion into a motion for summary judgment. See Royal Ins. Co., 85 F.Supp.2d at 278; Raytheon, 123 F.Supp. at 25, n. 1.

"An insurance policy is nothing more than a contract between the insurance carrier and its insured and the ordinary rules of contract interpretation shall govern." Valiant Ins. Co., 926 F.Supp. at 129. Interpretation of any contract, including an insurance contract, is a question of law for the court. Diamond Crystal Brands, Inc. v. Backleaf, LLC, 60 Mass. App. Ct. 502, 504-05, 803 N.E.2d 744, 747 (2004); Agri-Mark, Inc. v. Niro, Inc., 233 F. Supp. 2d 200, 209 (D. Mass. 2002); David v. American Home Assurance Co., 1997 WL 160367, *2 (S.D.N.Y. 1997).

The terms of an insurance policy must be construed to give the language its plain and ordinary meaning. Valiant Ins. Co., 926 F.Supp. at 129. Where an insurance policy plainly limits coverage, the language cannot be given an alternative interpretation. Id. In order to determine whether there is coverage and a duty to defend, the Court need only look at the underlying complaint and the terms of the policy under which coverage is sought. Herbert A.

Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003).  See also, All America Ins. Co., 112 F.Supp.2d at 726;  Valiant Ins. Co., 926 F.Supp. at 128-129;  Royal Ins. Co. of America, 85 F.Supp.2d at 276.

In Zunenshine v. Executive Risk Indemnity, Inc., 1998 WL 48375, * 4 (S.D.N.Y. 1998) the Court determined that substantially similar "pending litigation and prior notice" exclusions to those in the Federal and Axis policies clearly and unambiguously excluded coverage for the claim brought against the insured.  1998 WL 48375 at * 4.  As in Zunenshine, as a matter of law, an examination of the Federal Primary Policy and Axis Excess Policy and a comparison of the Pending and Prior Claims Exclusions in those policies to the Securities and ERISA Complaints leads to one conclusion: the policies exclude coverage for the ERISA Complaint.

The terms of the Axis Pending and Prior Claims Exclusion could not be clearer.[3]  The Axis policy specifically excludes coverage for any Claim which is "based upon, arising from or attributable to: (a) any demand, suit or other proceeding pending . . . on or prior to September 15, 2000 or any wrongful act, fact, circumstance or situation underlying or alleged therein; or (b) any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus."

Because the Court has before it unambiguous exclusions in the Federal and Axis policies as well as the underlying Securities and ERISA Complaints, the Court can properly rule on a Motion for Judgment on the Pleadings.  There is no need for protracted discovery because the declaration concerning coverage which both Federal and Axis seek involves contract

---

[3] Raytheon relies on David v. American Home Assurance Co., 1997 WL 160367, *3 (S.D.N.Y. 1997) to support its position that the Axis Pending and Prior Claims Exclusion is ambiguous.  David, however, is easily distinguished from the instant case because the exclusion in David used ambiguous terms, which the court found to be subject to interpretation.  No such terms are used in the Axis Pending and Prior Claims Exclusion, which precisely defines the excluded claims.

interpretation that is a matter of law for the Court to decide.  As set forth in further detail below, Federal and Axis are entitled to Judgment on the Pleadings because the ERISA Complaint falls within the Pending and Prior Claims Exclusions.

### III. THE SECURITIES AND ERISA LITIGATION ARISE FROM A COMMON NEXUS OF FACTS AND THEREFORE THE PENDING AND PRIOR CLAIMS EXCLUSIONS PRECLUDE COVERAGE FOR THE ERISA COMPLAINT.

While Raytheon takes great pains to try to point out immaterial differences in the Securities and ERISA Complaints in support of its argument that the Pending and Prior Claims Exclusions do not apply, it is inescapable that all of the claims in both cases arise out of Raytheon's alleged mismanagement and accounting improprieties and the misrepresentations Raytheon allegedly made regarding its financial performance in order to inflate the value of its stock.  As a result of these alleged acts and omissions, Raytheon's stock allegedly was devalued causing alleged damages to both investors and the employees who held Raytheon stock in their 401K plans.  While the theories of liability may be different, these matters arise out of the same nucleus of facts over approximately the same period of time.

The Federal and Axis Pending and Prior Claim Exclusions, do not as Raytheon erroneously attempts to assert, require complete identity of parties, causes of action and class periods.  To give effect to Raytheon's construction of the exclusions would be to render them meaningless.  The exclusions are unambiguous.  The exclusions do not require the complete identity of parties, causes of action and class periods.  They are much more broad.

The Axis exclusion in particular not only excludes coverage for Claims based upon, arising from or attributable to such proceeding as the Securities Litigation which was pending on or before September 15, 2000, but also excludes coverage for Claims based upon, arising from or attributable to <u>any</u> *wrongful act, fact, circumstance or situation underlying or alleged in the*

*Securities Litigation*.  Certainly, the Axis exclusion encompasses and applies to exclude coverage for the ERISA Complaint, which plainly arises from the same (and most assuredly any) wrongful act, fact, circumstance or situation underlying or alleged in the Securities Litigation.

Even assuming for the sake of argument that this broad language of the Axis exclusion did not exclude coverage for the ERISA Complaint, the matter would nonetheless be excluded from coverage.  The Axis exclusion goes on to further exclude coverage for Claims based upon, arising from or attributable to <u>any other</u> wrongful act, fact, circumstance or situation <u>whenever occurring</u>, which together with a wrongful act, fact, circumstance or situation underlying or alleged in the Securities Litigation, are causally or logically interrelated by a common nexus.

In this regard, Raytheon makes much ado about the post-October 1999 wrongful acts alleged by the ERISA plaintiffs in a vain attempt to disassociate the two lawsuits.  But the Axis exclusion does not require identical class periods in each lawsuit.  The additional and subsequently occurring wrongful acts set forth in the ERISA Complaint which were not expressly set forth in the prior Securities Litigation are most certainly causally or logically interrelated to the wrongful acts, facts, circumstances or situations underlying or alleged in the Securities Litigation.  See Axis Moving Brief, at pp 3-8 .  Consequently, there is no coverage for the ERISA Complaint under the Federal as well as the Axis Pending and Prior Claim Exclusions.

While Raytheon attempts to distinguish the matters, its Opposition makes a significant admission about their similarity.  According to Raytheon, "a large number of the ERISA plaintiffs" were also "members of the class in the securities litigation."  Opposition, p. 9.  This is not surprising because all of the plaintiffs, regardless of when or how they became class members, are holders of Raytheon stock (either directly or in their 401K plans) who were allegedly damaged by the devaluation in the stock caused by Raytheon's alleged

mismanagement. This admission buttresses the Plaintiffs' position that the causes of action arise out of the same common nexus of facts. Indeed, it can be expected that Raytheon will, as it should, argue before this very Court that the settlement it paid in the Securities Litigation offsets if not entirely extinguishes any damages claimed by the ERISA plaintiffs.

The courts have recognized the inherent commonalities between securities and ERISA litigation brought against the same company arising out of the same alleged acts and omissions, regardless of the theory of liability. See, e.g. In re: Enron Corp. Securities, Derivative & "ERISA" Litigation, 196 F.Supp.2d 1375, 1376 (Jud.Pan.Mult.Lit. 2002); In re: WorldCom, Inc., Securities & "ERISA" Litigation, 226 F.Supp.2d 1352, 1354 (Jud.Pan.Mult.Lit. 2002); In re: AOL Time Warner, Inc. Securities Litigation, 235 F.Supp.2d 1380 (Jud.Pan.Mult.Lit. 2002); In re Lucent Technologies, Inc., Securities Litigation, 2004 WL 1647316, *29 (D.N.J. 2004). Many courts consolidated such actions as a result of the similarities between the claims. See id.

In centralizing the securities and ERISA claims in In re: Enron, the Multidistrict Panel found that:

> Whether the actions be brought by securities holders seeking relief under the federal securities laws, shareholders suing derivatively on behalf of Enron, or participants in [] retirement savings plans suing for violations of the Employee Retirement Income Security Act of 1974, all actions can be expected to focus on a significant number of common events, defendants and/or witnesses. Centralization under [28 U.S.C. § 1407] is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve resources of the parties, their counsel and the judiciary.

196 F.Supp.2d at 1376.

This view of the interrelation between securities and ERISA litigation against the same company has been echoed by the Multidistrict Panel repeatedly in subsequent securities/ERISA cases. See In re: WorldCom, 226 F.Supp.2d at 1354 (adopting the analysis of In re: Enron); In re: AOL Time Warner, 235 F.Supp.2d at 1381 (finding that the actions involved common

questions of fact); In re: Lucent, 2004 WL 1647316 at *29 (coordinating parallel derivative actions, securities class actions, and ERISA violations).

In order for the Pending and Prior Claims and Exclusion to apply, there need only be a sufficient factual nexus between the Securities Litigation (and the factual allegations set forth therein) and the ERISA Litigation. Zunenshine, 1998 WL 483475 at * 4. The two suits need not be identical and small differences in the legal theories, parties and requests for relief are not material. Id. at *5. Here as in the Enron, WorldCom, AOL Time Warner, and Lucent cases, regardless of whether the class of plaintiffs is seeking relief under federal securities law or under the Employee Retirement Income Security Act, both actions "focus on a significant number of common events, defendants and/or witnesses."[4] In addition, as set forth in detail in the Plaintiffs' Motions for Judgment on the Pleadings, the core factual allegations in the ERISA Complaint mirror the Securities Complaint. As such, the Pending and Prior Claims Exclusions operate to exclude coverage for the ERISA claim in these circumstances.

## **CONCLUSION**

For the reasons set forth herein and in the Plaintiffs' Motions for Judgment on the Pleadings, Axis is entitled to Judgment in its favor against Raytheon, including a declaration that there is no coverage available to Raytheon under the Axis policy.

---

[4] While Raytheon also attempts to distinguish the ERISA Complaint by pointing out that there are allegations concerning the policies, procedures, oversight and administration of the Raytheon's ERISA plan, those allegations are of no consequence unless the ERISA plaintiffs allege that they have been damaged. In fact, absent the alleged wrongful devaluation in stock, both practically and legally there would be no ERISA Litigation because the ERISA plaintiffs would have no damages. Therefore, at the core of both cases is the allegation that accounting irregularities at Raytheon caused a decline in its stock price. It is this set of common allegations which give rise to both suits.

By its counsel,

\_\_/s/ John Hughes_____
John D. Hughes, Esq. (BBO No. 243660)
Windy L. Rosebush, Esq. (BBO No.636962)
Edwards & Angell, LLP
101 Federal Street
Boston, MA  02110
Ph:  (617) 439-4444

Date: August  19, 2004         Fx:  (617) 439-4170

## CERTIFICATE OF SERVICE

I, Windy L. Rosebush, hereby certify that on this 19th day of August, 2004, I caused a copy of the foregoing to be served upon all counsel of record by filing the same electronically and or mailing copies of the same via first class mail for all counsel not registered with the ECF for the United States District Court for the District of Massachusetts.

_____/s/ Windy L. Rosebush_____
Windy L. Rosebush