*04-cv-10432*

# United States Court of Appeals
## For the First Circuit

---

No. 05-1086

FEDERAL INSURANCE COMPANY;
AXIS SURPLUS INSURANCE COMPANY,

Plaintiffs, Appellees;

v.

RAYTHEON COMPANY

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Richard G. Stearns, U.S. District Judge]

---

Before

Torruella, Dyk\*, and Howard, Circuit Judges.

---

David Newmann, with whom Ellen S. Kennedy, Kurt B. Gerstner, Hogan & Hartson, LLP, and Campbell Campbell Edwards & Conroy, P.C., were on brief, for appellee Federal Insurance Company.

John D. Hughes, with whom Wendy L. Rosebush and Edwards & Angell, LLP, were on brief, for appellee Axis Surplus Insurance Company.

Christopher Landau, with whom James F. Kavanaugh, Jr., Johanna L. Matloff, James P. Gillespie, Eric B. Wolff, Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, and Kirkland & Ellis, LLP, were on brief, for appellant Raytheon Company.

---

October 21, 2005

---

\*Of the Federal Circuit, sitting by designation.

DYK, **Circuit Judge**.  This is an insurance coverage dispute.  On May 19, 2003, a class action was filed against Raytheon Company ("Raytheon") under the Employee Retirement Income Security Act of 1974 ("the ERISA action").  At that time, Raytheon was insured under a liability insurance policy issued by Federal Insurance Company ("Federal") and an excess policy issued by Axis Surplus Insurance Company ("Axis").  Raytheon requested coverage from the insurers.  In response, the insurers filed suits for declaratory judgment of non-coverage, invoking the district court's diversity jurisdiction.  The insurers contended that the ERISA action was excluded from coverage under the pending and prior litigation exclusions of the policies because there were overlapping allegations between the ERISA action and an earlier securities lawsuit brought against Raytheon in 1999, before the effective dates of the policies.

The district court held that coverage was excluded under the prior and pending litigation exclusion clauses of both policies.  We hold that coverage for both insurers is excluded under the Federal policy.  We accordingly affirm the judgment of the district court.

I

Raytheon provides products and services in the areas of defense and commercial electronics.  It is a public company listed on the New York Stock Exchange.  On October 12, 1999, the Wall

-3-

Street Journal published an article reporting that Raytheon, unbeknownst to investors, experienced cost overruns and was behind schedule on many defense-related contracts. Later that day, Raytheon reported one-off charges totaling $638 million and reduced earnings expectations. The charges and reduced earnings forecast caused a sharp decline in Raytheon's stock price.

On October 19, 1999, a class action invoking section 10 the Securities Exchange Act of 1934, 15 U.S.C. § 78j (2000), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (2005), was filed in the District of Massachusetts against Raytheon and several of its senior officers ("the Securities action"). In re Raytheon Co. Sec. Litig., No. 99-CV-12142 (D. Mass. June 12, 2000) (amended complaint). The lead plaintiff was the New York State Common Retirement Fund, which sought to represent a class of persons who purchased Raytheon stock from October 7, 1998, to October 12, 1999 (the date of the Wall Street Journal article). The complaint in the Securities action alleged that during the class period, Raytheon issued materially false and misleading statements regarding its financial performance. Briefly, the Securities complaint alleged that (1) Raytheon's Engineering & Constructors division ("RE&C") failed to disclose losses on major contracts; (2) RE&C misleadingly reported revenues on existing and anticipated contracts; (3) Raytheon failed to disclose that projects relating to the P-3 Orion aircraft and other defense equipment were over

-4-

budget and behind schedule; and (4) Raytheon failed to disclose that the Joint Primary Aircraft Training System was over budget and behind schedule.    The Securities action apparently settled in December 2004.

In May 2003 a second class action was filed against Raytheon and several of its officers and employees in the District of Massachusetts, this time based on the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.    In re Raytheon ERISA Litig., No. 03-CV-10940 (D. Mass. Apr. 20, 2004) (amended complaint).    The lead plaintiffs were Benjamin Wall and Joseph Duggan III, former Raytheon employees who sought to represent a class of persons who were participants in or beneficiaries of Raytheon's Savings and Investment Plan (the "Plan")[1] at any time between October 7, 1998, and date of the complaint.  In contrast to the Securities complaint, the ERISA complaint alleged that the defendants were ERISA fiduciaries of the Plan; that the defendants regularly communicated to Plan participants during the all relevant times;  and that the defendants had financial interests tied to the Raytheon stock price at all relevant times.    It then charged the defendants with four counts of breach of fiduciary duty, specifically (1) imprudent investment; (2) failure to monitor other

---

[1]    The Plan comprised three types of plans: (1) an employee stock ownership plan, in which Raytheon employees received Raytheon stock annually as a fixed percentage of their annual income; (2) a participant-controlled 401(k) style plan; and (3) a matching plan where Raytheon matched any employee investments in Raytheon stock.

fiduciaries; (3) misrepresentation and failure to disclose information to beneficiaries; and (4) failure to avoid conflicts of interest. The ERISA litigation is ongoing.

Apart from differences in parties and legal theories, the factual allegations of the ERISA complaint were in many respects nearly identical to the Securities complaint, but in other respects were different from the Securities complaint. With respect to alleged misdeeds by Raytheon occurring prior to October 12, 1999 (the cut-off date for the Securities class action), the factual allegations of the ERISA complaint mirrored those of the Securities complaint; including (1) RE&C failed to disclose and improperly accounted for losses on major contracts; (2) RE&C misleadingly recognized revenues on existing and anticipated contracts; and (3) Raytheon failed to disclose material cost overruns and delays affecting projects related to the P-3 Orion aircraft. With the exception of allegations concerning several Raytheon Systems Corporation projects and the Joint Primary Aircraft Training System, it is fair to say that all the allegations of Raytheon misdeeds made in the Securities complaint were also included in the ERISA complaint.

However, in two major respects the ERISA complaint included allegations not found in the Securities complaint. First, there were substantial allegations of misdeeds pertaining to the post-October 12, 1999, period in the ERISA complaint that were not

alleged in the Securities complaint. For example, the ERISA complaint alleged the existence of "recurring indications of accounting and control irregularities . . . ." J.A. at 194. It alleged that "Defendants' misleading, inaccurate, and incomplete statements regarding the Company's fiscal health extended from 1998 through 1999, and beyond." Id. at 195. Other post-October 12, 1999, events alleged included (1) the SEC commenced an investigation into Raytheon's accounting practices in 2003; (2) Raytheon made material misrepresentations in selling the RE&C division to Washington Group International ("WGI"), leading to litigation by WGI and its shareholders; and (3) the SEC commenced proceedings against Raytheon and its former CFO relating to violations of SEC regulations.

Second, to support the different legal theories asserted under ERISA in contrast to the Securities Exchange Act, relevant facts not contained in the Securities complaint were alleged in the ERISA complaint. The complaint alleged that the defendants were ERISA plan fiduciaries. To support the imprudent investment charge, the ERISA complaint alleged that at "[a]ll relevant times, Defendants knew or should have known that Raytheon was engaged in the questionable business practices detailed above which made Raytheon stock an imprudent Plan investment." Id. at 215. To support the failure to disclose and misrepresentation charge, the complaint alleged that "Raytheon regularly communicated with

-7-

employees, including Plan participants, about Raytheon's performance" and failed to disclose and misrepresented material information to Plan beneficiaries. Id. at 217. To support the conflict of interest charge, the complaint alleged that the defendants' "compensation was [] closely tied to the price of Raytheon Stock" and that the defendants had failed to avoid improper conflicts of interest. Id. at 218.

After the ERISA action was filed, Raytheon sought coverage from the insurers. The insurers denied coverage and filed suit in the District of Massachusetts, seeking a declaratory judgment of non-coverage. The insurers contended that coverage was excluded under the prior and pending litigation clause in the Federal Insurance policy, which states

> The Company [Federal] shall not be liable for Loss on account of any Claim made against any Insured . . . based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any Insured, on or prior to [September 15, 2000], or the same or any substantially similar fact, circumstance or situation underlying or alleged therein.

J.A. at 32-33.

As an excess policy, the Axis policy has a clause stating, "In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable Underlying Insurance." J.A. at 54. Thus, if coverage is excluded under the Federal policy, it is also excluded under the Axis policy. The Axis policy also has its own prior and

pending litigation exclusion, which is worded somewhat differently,

stating

> the Insurer [Axis] shall not be liable for any amount in any Claim . . . based upon, arising from, or attributable to:
>     (a) any demand, suit or other proceeding pending, or order, decree or judgment entered, against any Insured on or prior to September 15, 2000 or any wrongful act, fact, circumstance or situation underlying or alleged therein; or
>     (b) any other wrongful act, fact, circumstance or situation whenever occurring, which together with a wrongful act, fact, circumstance or situation described in (a) above are causally or logically interrelated by a common nexus.

J.A. at 62.

The insurers moved for judgment on the pleadings. In an oral decision, the district court construed the language "based upon . . . the same or any substantially similar fact, circumstance or situation underlying or alleged" to mean that "if the prior complaint contains any overlapping claims made against any Insured, the exclusion is triggered." Applying this test, the district court found that "Raytheon has not, and cannot, credibly argue that the core allegations of the prior litigation complaint and the ERISA complaint do not overlap." Instead, the district court found that the complaints in the Securities action and the ERISA action revealed "numerous allegations of substantially similar facts, circumstances or situations." Thus, the district court concluded that coverage was excluded, i.e. there was neither a duty to defend

-9-

nor liability for any loss.    Raytheon appeals from the final
judgment of the district court.

## II

As a preliminary matter, Raytheon submits that the case
should be stayed pending the outcome of the ERISA litigation, and
in the interim the insurers must defend Raytheon.  According to
Raytheon, whether a subsequent lawsuit is "based upon . . . any
substantially similar fact, circumstance or situation underlying or
alleged" in a prior lawsuit cannot be determined until both
lawsuits are over.  We disagree.

Under Massachusetts law,[2] as a general matter, "the
question of the initial duty of a liability insurer to defend
third-party actions against the insured is decided by matching the
third-party complaint with the policy provisions." Cont'l Cas. Co.
v. Gilbane Bldg. Co., 461 N.E.2d 209, 212 (Mass. 1984).  In this
inquiry, "if the allegations of the complaint are 'reasonably
susceptible' of an interpretation that they state or adumbrate a
claim covered by the policy terms, the insurer must undertake the

_____

[2]    The parties assume that Massachusetts' substantive law
applies to the contract interpretation issue.  In this situation,
we follow the rule of Bird v. Centennial Ins. Co., 11 F.3d 228, 231
n.5 (1st Cir. 1993), that where "there is at least a 'reasonable
relation' between the dispute and the forum whose law has been
selected by the parties, we will forego an independent analysis of
the choice-of-law issue and apply" the state substantive law
selected by the parties.  Merchs.' Ins. Co. of N.H., Inc. v. U.S.
Fid. & Guar. Co., 143 F.3d 5, 8 (1st Cir. 1998) (quoting Bird, 11
F.3d at 231 n.5).

defense." Id. (quoting Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 340 (Mass. Ct. App. 1983)). The duty to defend is triggered even if the allegations of the complaint are baseless. Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 18-19 (1st Cir. 1997). "However, 'when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant.'" Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 531 (Mass. 2003) (quoting Timpson v. Transamerica Ins. Co., 669 N.E.2d 1092, 1095 (Mass. Ct. App. 1996)); see also Terrio v. McDonough, 450 N.E.2d 190, 194 (Mass. Ct. App. 1983).

Raytheon cites a line of cases holding that even if an insurer has an initial duty to defend based on the complaints alone, it may be absolved of the duty to defend and liability for loss by subsequent developments in the litigation. See, e.g., Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc., 555 N.E.2d 568, 575 (Mass. 1990); Sterilite Corp., 458 N.E.2d at 343-44. This line of cases provides no aid to Raytheon. The insurers are not contending that there have been subsequent developments in the litigation absolving them of an initial duty to defend. Rather, they are contending that they do not even have the initial duty to defend.[3] Nor is Raytheon contending that subsequent developments

---

[3]    We note that "the obligation of the insurer to defend is based not only on the facts alleged in the complaints but also on the facts that are known or readily knowable by the insurer."

-11-

have created a duty to defend.[4]  Massachusetts law clearly provides that resolution of the issue of coverage, at least initially, is to be based on the allegations of the third-party complaints, here the complaints in the Securities and ERISA actions.

Lastly, Raytheon relies on various district court cases, especially Home Ins. Co. of Ill. v. Spectrum Info. Techs., Inc., 930 F. Supp. 825 (E.D.N.Y. 1996), for the proposition that resolution of the duty to defend on the pleadings is premature.  To the extent that these cases are contrary to Massachusetts law, we must follow the Supreme Judicial Court.

### III

On the merits, we must construe the Federal insurance policy and apply it to the allegations of the complaints.  In light of our conclusion that coverage is excluded under the Federal policy, we need not analyze the Axis exclusion.

---

Desrosiers v. Royal Ins. Co. of Am., 468 N.E.2d 625, 627-28 (Mass. 1984).  This exception is not applicable because Raytheon has not alleged that any such fact exists.

[4]    We thus have no occasion to decide whether subsequent developments in the ERISA litigation could later trigger the duty to defend and liability for loss.  "A note of caution is in order. . . .  [S]hould a trial subsequently establish that the facts were other than first pleaded . . . , and should an amendment of the complaint be allowed, the insurer would be bound to indemnify the insured for the damages recovered against him and for the costs of the defense.  To that degree an insurer's decision not to defend is made at some peril."  Terrio, 450 N.E.2d at 194 (citations omitted).

"The responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court." Cody v. Conn. Gen. Life Ins. Co., 439 N.E.2d 234, 237 (Mass. 1982). We thus must independently determine the construction of the policy. In this inquiry, "doubts about ambiguous insurance policy provisions are to be resolved against the insurance company." J. D'Amico, Inc. v. City of Boston, 186 N.E.2d 716, 721 (Mass. 1962). But when the policy is "plain and free from ambiguity, we do not . . . construe them strictly against the insurer. Rather, we must construe the words of the policy in their usual and ordinary sense." Barnstable County Mut. Fire Ins. Co. v. Lally, 373 N.E.2d 966, 968 (Mass. 1978).

The Federal policy provides an exclusion for

> any Claim made against any Insured . . . based upon, arising from, or in consequence of any demand, suit or other proceeding pending . . . on or prior to [September 15, 2000], or the same or any substantially similar fact, circumstance or situation underlying or alleged therein.

J.A. at 32-33. The Federal policy is a "claims-made" policy, where liability for coverage is triggered by the filing of a claim during the policy period instead of the occurrence of an underlying event in the policy period. The policy defines a "claim" as including "a civil proceeding commenced by the service of a complaint or similar pleading . . . against any Insured for a Wrongful Act." J.A. at

-13-

37. Thus a claim for present purposes is equivalent to a complaint.

The language of the policy cannot reasonably be given the broadest possible construction, under which any overlapping fact between the two proceedings -- for example, the identity of Raytheon as the defendant in the context of otherwise unrelated facts -- would trigger the exclusion. We do not understand any party to contend otherwise. At the same time, complete identity between the lawsuits is plainly not required. Indeed, all parties agree that the two complaints need not be identical, and that differences in theories of recovery or the identity of the parties in the proceedings do not in and of themselves preclude exclusion.[5] Beyond that, they disagree. The district court here construed "based upon . . . any substantially similar fact, circumstance or situation underlying or alleged" to exclude coverage when there are "any overlapping claims." The district court, however, did not make clear the degree of overlap required for the allegations in the complaint, instead finding only that Raytheon cannot "credibly argue that the core allegations of the prior litigation complaint and the ERISA complaint do not overlap" and that "a comparison of

---

[5]    See Comerica Bank v. Lexington Ins. Co., 3 F.3d 939 (6th Cir. 1993) (prior and pending litigation exclusion applied to subsequent suit when bank trustee entered into two conflicting contracts to sell trust assets, was first sued for breach of contract by one contracting party, and then subsequently sued for mismanagement of the trust by the beneficiaries for having entered into conflicting contracts).

the complaints reveals numerous allegations of substantially similar facts, circumstances or situations."

Axis submits that "all that is required is for the ERISA litigation to contain 'any substantially similar fact, circumstance or situation' alleged in the Prior Litigation," though we understand this to mean any overlap in determinative facts. Br. of Axis at 20 (emphasis omitted). Federal appears to distance itself from this construction, stating that "whether a 'single overlapping fact or claim' would trigger the Exclusion is not a question the Court need answer," Br. of Federal at 18, but does not offer an alternative construction of the exclusion clause. For its part, Raytheon advocates that "the exclusion is triggered only when two lawsuits are 'the same' or 'substantially similar,'" or alternatively where "there is significant overlap between the lawsuits as a whole," Br. of Raytheon at 13, 14 (emphasis in original), apparently meaning that the two lawsuits must be virtually identical save for differences in the parties and theories of liability. See id. at 14-15 (purporting to cite cases articulating requirements of, inter alia, "allegations of 'virtually identical false statements'"; "the same underlying circumstance"; or "'essentially the same set of facts'"). We think that the correct construction is somewhat different from the position of any of the parties.

-15-

Raytheon's construction, apparently relying on the "same or any substantially similar fact, circumstance or situation" language in the policy, is not warranted.  While the exclusion clause uses the language "substantially similar," it refers to the subsequent "fact, circumstance or situation."  The "substantially similar" language cannot by itself be read to refer to the "demand, suit, or other proceeding."

Raytheon argues alternatively that the second claim must be "based upon" the first.  This is correct,[6] and we must determine the meaning of the word "based" in this context.  We do not agree with Raytheon's apparent construction of "based" to mean "virtually identical."

"Words in exclusionary clauses of insurance contracts should be construed 'in their usual and ordinary sense.'"  Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 816 (Mass. 1999) (quoting Liquor Liab. Joint Underwriting Ass'n of Mass. v. Hermitage Ins. Co., 644 N.E.2d 964, 967 (Mass. 1995)); see also Barnstable, 373 N.E.2d at 968; Metropolitan Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co., 793 N.E.2d 1252, 1255 (Mass. Ct. App. 2003).  In construing contracts courts often look to dictionaries for assistance in determining ordinary meaning.  See, e.g., Norfolk S.

---

[6]    As noted, the exclusion clause also excludes claims "arising from" and "in consequence of" any substantially similar fact, situation or circumstance previously alleged.  However, no party has asserted that either of the two other exclusionary grounds ("arising from" or "in consequence of") applies here.

Ry. v. James N. Kirby, Pty Ltd., 125 S. Ct. 385, 397-98 (2004).
Reference to dictionaries in interpreting contracts of insurance is
also appropriate.  Aschenbrenner v. U. S. Fid. & Guar. Co., 292
U.S. 80, 85 (1934).  In particular, Massachusetts courts refer to
dictionaries in interpreting insurance contracts.  Ellery v.
Merchs.' Ins. Co., 20 Mass. (3 Pick.) 46, 48 (1825) (using
dictionary to define "bilging" in insurance contract).

        Consulting the dictionary, the ordinary meaning of
"based," used as a verb in this context, is "to use as a base or
basis for . . . used with on or upon," Webster's Third New
International Dictionary of the English Language 180 (3d ed. 1961)
("Webster's Dictionary") (emphasis in original), or "to place on or
upon a foundation or logical basis." Oxford English Dictionary 979
(2d ed. 1989).  Webster's Dictionary clarifies the usage in this
context, explaining that "BASE now usu[ally] applies to what
underlies a belief, a system of thought, a judgment, a hope, and so
on."  Webster's Dictionary at 181.  The dictionary definition of
the word "based" here excludes situations in which the complaint in
the second action does not draw substantial support from the
allegations of the first complaint.  Conversely, it does not
require that the first action provide the sole support for the
second.  Cf. MCI Telecomms. Corp. v. Am. Tel. & Tel. Co., 512 U.S.
218, 225 (1994) ("modify" in its ordinary usage does not encompass
fundamental change).  We think that the policy thus requires the

-17-

allegations in the second complaint find substantial support in the first complaint, i.e. that the allegations of the second complaint substantially overlap those of the first. Only with a substantial overlap can the first complaint be said to be a "foundation or logical basis" for the second. "Based" also suggests that the appropriate inquiry is whether the second complaint substantially overlaps the first with respect to relevant facts, without regard to whether the first complaint substantially overlaps the second.[7]

Requiring a substantial but not complete overlap with the prior complaint also serves the policy behind such prior and pending litigation exclusion clauses. Most directly, prior and pending litigation exclusions "promote the giving of prompt notice and [] avoid stacking the limits of successive policies to cover essentially the same or very closely related claims." Kenneth S. Abraham, Insurance Law and Regulation: Cases and Materials 587 (4th ed. 2005). Prior and pending litigation exclusions thus combat the problem of adverse selection or "insuring the building already on fire"; that is, an insured who has previously been sued faces a greater risk of related litigation and has a corresponding incentive to seek insurance. John H. Mathias, Jr., et al.,

---

[7]    The Third Circuit, in dictum, suggested in Bensalem Township v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303 (3d Cir. 1994), that a similar clause "limited coverage to claims completely unrelated to any prior matter." Id. at 1304. However, that opinion did not consider the dictionary definition of "based" and the clause at issue was broader because it excluded subsequent claims "in any way involving" the prior claim. See id. at 1305.

Directors and Officers Liability: Prevention, Insurance and
Indemnification § 8.09 (2003) (internal quotations omitted); see
George L. Priest, The Current Insurance Crisis and Modern Tort Law,
96 Yale L. J. 1521, 1574 (1987). The insurance company's
legitimate interest in combating the adverse selection problem is
properly implicated when there is a real and substantial overlap
with the complaint in the prior lawsuit, as opposed to an
incidental or fortuitous relationship to the prior complaint.

Accordingly, we hold that the Federal exclusion,
excluding any subsequent claim "based upon . . . the same or any
substantially similar fact, circumstance or situation underlying or
alleged" in a prior claim, applies when there is substantial
overlap in the second complaint with the facts underlying or
alleged in the first complaint.

**IV**

Applying the policy as we have interpreted it to the
allegations of the complaints, there is little doubt that there is
substantial overlap in the allegations of the two complaints.
Raytheon's counsel readily conceded at oral argument that "there is
no question that the ERISA plaintiffs cut and pasted a lot of the
factual allegations from the securities lawsuit."

As outlined previously, the ERISA complaint alleged
important pre-October 12, 1999, misdeeds, including (1) Raytheon
stock was overvalued due to cost overruns in defense related

-19-

contracts; (2) RE&C improperly accounted for losses on major contracts; (3) RE&C prematurely recognized revenues on anticipated contracts; (4) RE&C improperly accelerated recognition of revenues on existing contracts; and (5) Raytheon failed to disclose material cost overruns and delays affecting projects related to the P-3 Orion aircraft. These allegations mirror the allegations of the Securities complaint. All four counts of the ERISA complaint recite these allegations by reference. As should be clear even from this brief summary, a substantial part of the operative facts alleged in the ERISA complaint appears in the Securities complaint. Thus these allegations substantially overlap with the prior allegations contained the Securities complaint.

To be sure, not all of the facts alleged in the ERISA complaint are contained in the Securities complaint. In particular, most of the activities occurring after the Securities class cut-off date of October 12, 1999, do not appear in the Securities complaint. The ERISA plaintiffs allege, for example, that Raytheon shares continued to be an imprudent investment due to continuing accounting improprieties after October 12, 1999. They allege that "Defendants' misleading, inaccurate, and incomplete statements regarding the Company's fiscal health extended from 1998 through 1999, and beyond." J.A. at 195. Other post-October 12, 1999, conduct alleged includes the sale of the RE&C division to WGI and the consequent litigation with WGI and its shareholders, and

SEC investigations into Raytheon and its executives.  Raytheon correctly points out that, solely from a temporal perspective, the overlap constitutes one-sixth of the relevant period of the ERISA complaint.  So too, some allegations pertaining exclusively to the elements of an ERISA lawsuit, such as communication with Plan beneficiaries by the fiduciary defendant, do not appear in the Securities complaint.  Some of these non-overlapping facts are critical to the ERISA action -- for example, the defendants' ERISA fiduciary status is a _sine qua non_ of the ERISA action.  But acknowledging that there are substantial areas of non-overlap does not defeat the fact here that there is substantial overlap between the two complaints.

## V

We conclude that the Federal prior and pending litigation exclusion, excluding "any Claim made against any Insured . . . based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any Insured . . . , or the same or any substantially similar fact, circumstance or situation underlying or alleged therein," is properly construed to exclude coverage if there is substantial overlap between allegations in the complaint of the claimed proceeding and allegations in the complaint of the prior proceeding.  While we recognize that our interpretation will not cleanly resolve every case involving exclusionary policy language

similar to that involved here, it easily resolves this case.  There
is clearly substantial overlap between the allegations in the ERISA
complaint  and  the  allegations  in  the  Securities  complaint.
Coverage is therefore excluded.  Accordingly, the judgment of the
district court is affirmed.

It is so ordered.

**Dissent follows.**

**HOWARD**, **Circuit Judge**, **dissenting**.  The majority reads
the Federal exclusion to apply "if there is substantial overlap
between the allegations in the complaint of the claimed proceeding
and allegations in the complaint of the prior proceeding." <u>Ante</u> at
20.  The majority's formulation, while well explained, is both
overinclusive and underinclusive.  The formulation is overinclusive
because, as in this case, it works to deny the insured a defense
and indemnification under a claims-made policy for claims made
within the policy period which are "based upon, arise[] from, or in
consequence of . . . [a] fact, circumstance or situation" that has
never been the subject of a demand or suit.[8]  The formulation is
underinclusive because, in some future case where there is overlap
that is not "substantial" between the allegations in the complaint
and the allegations in some prior complaint, it could work to
create on the part of Federal a duty to indemnify for a judgment
that is premised entirely on a claim "based upon, aris[ing] from,
or in consequence of . . . [a] fact, circumstance or situation"
pleaded against the insured in a demand or lawsuit prior to the
effective date of the policy.

The majority says that its formulation, inexact though it
may be, is the inevitable result of the lawsuit-to-lawsuit

---

[8]There is no dispute that, at the very least, the amended
complaint can be read to state breach of fiduciary duty claims on
behalf of putative plaintiffs who joined Raytheon in 2000 - after
the conduct at issue in the earlier securities lawsuit had
concluded.

comparison required by the policy's definition of the term "claim"
– i.e., "a civil proceeding commenced by the service of a complaint
or similar pleading . . . against any Insured for a Wrongful Act."
To avoid the inexactitude, the majority says, one would have to
adopt a more conventional definition of the term "claim," one which
refers not to the entire lawsuit, but to individual liability
theories asserted within the complaint.   (This more common
definition is, I must acknowledge, implicit in my use of the term
"claim" in the opening paragraph of this dissent.)  But application
of this more common definition, in the majority's view, is
precluded by the unambiguous, lawsuit-focused definition the policy
adopts.

        I disagree.  Certainly, the policy's definitions section
contemplates that the entire lawsuit will constitute the "claim"
when the lawsuit is premised on a single "Wrongful Act" – even when
the single "Wrongful Act" gives rise to multiple liability
theories.  In such a situation, it makes sense to look to the "Act"
on which the lawsuit is based, to ask whether that same (or a
substantially similar) "Act" was the subject of a demand or suit
brought prior to the effective date of the policy, and to apply the
exclusion if so.   But what of a situation, as here, where the
lawsuit alleges not a single "Wrongful Act," but a number of
"Wrongful Acts," only some of which were previously asserted

against the insured?[9]  The definitions section of the policy does
not compel us to treat the entire second lawsuit as the relevant
"claim" in such a situation.  Rather, it is silent.  Given this
silence, we should strive to adopt and apply a definition of the
term "claim" which addresses the parties' reasonable expectations
when they bargained for the "claims-made" policy underlying this
litigation.  And the definition which best addresses the parties'
reasonable expectations is one which regards as the relevant
"claim" the liability theory (or liability theories) arising out of
each alleged "Wrongful Act."[10]

        Application of this definition quickly yields the
conclusion that there is a duty to defend in this case, as the
complaint is reasonably susceptible of an interpretation under
which there is at least one "claim" which arises from a "Wrongful

---

[9]The underlying lawsuit alleges at least four categories of
"Wrongful Acts" on the part of Raytheon: (1) failure to provide
complete and accurate information to plan participants and
beneficiaries, (2) imprudent investment, (3) a failure to monitor
certain decision makers within the company, and (4) breach of the
duty to avoid conflicts of interest.  Only the first category of
"Wrongful Acts" was alleged in the earlier securities litigation.

[10]Raytheon did not develop an argument for such a definition in
either its papers opposing the insurers' Fed. R. Civ. P. 12©)
motion for judgment on the pleadings or in its appellate brief.
But the question is one of law, see Cody v. Conn. Gen. Life Ins.
Co., 439 N.E.2d 234, 237 (Mass. 1982), as to which the movant
insurers bore the burden of persuasion.  As the majority
recognizes, our construction of the policy is not circumscribed by
the parties' arguments, see ante at 14, especially since we
confront here boilerplate language which has been the subject of
litigation before, see, e.g., id. at 13 n.4, and which likely will
be the subject of litigation again.

Act" which was not alleged in the earlier securities litigation. See Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 530 (Mass. 2003) (the duty to defend arises under Massachusetts law whenever "the allegations of the complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms") (citation and internal quotation marks omitted); see also supra n.2. Application of this definition also will yield more sensible results at the end of the lawsuit should there be a plaintiffs' judgment on one or more of the asserted liability theories. Those "claims" ending in plaintiffs' verdicts which are based on the same (or substantially similar) facts to those pleaded in the securities lawsuit would be excluded from coverage, but those based on different facts would be covered.

In sum, to the extent that the majority's formulation reads the exclusion to deny coverage for claims that would be covered but for the fortuity that they are asserted in a complaint which also sets forth claims that are excluded, it denies the insured coverage (both defense and indemnification) to which it is entitled. And to the extent that the formulation allows for the possibility that Federal will be called upon to indemnify an insured for liability under a claim based on allegations that were lodged against the insured before the policy was purchased, it

-26-

denies Federal a liability immunity for which it has bargained.  I therefore respectfully dissent.